VAUGHAN v. CITY OF SEARCY.

4-5872                                       135 S. W. 2d 319

Opinion delivered January 8, 1940.

*Roth & Taylor*, for appellant.

*Harry Neelly, Cul L. Pearce, E. C. Yingling, Jr.*, and *C. E. Yingling*, for appellees.

*J. E. Lightle, Jr.*, and *W. M. Walls, Amicus Curiae.*

MEHAFFY, J.: E. N. Rand and others, as taxpayers, brought this suit in the White chancery court to enjoin the City of Searcy, its mayor and city council, from calling and holding an election and issuing bonds under

Amendment No. 13 to the Constitution. An ordinance had been adopted and an election called thereunder at the time the suit was filed.

The complaint alleged that the appellants were citizens and taxpayers and owned both real and personal property in the City of Searcy; that the City of Searcy is a municipal corporation. The other appellees named are the mayor and aldermen of said city. It is alleged that on September 11, 1939, said city, through the mayor and aldermen, passed an ordinance, No. 271, submitting to the voters of the City of Searcy, Arkansas, the question whether it would issue bonds in the amount of $30,000 for the construction of an auditorium and on September 14, 1939, the mayor issued a proclamation calling an election to vote on said proposal of constructing said building and issuing bonds and set October 16, 1939, as the time for holding the election. It was alleged that the appellees were seeking to construct said building and issue bonds under and by the authority of Amendment No. 13 of the Constitution of the State of Arkansas. It was further alleged that the appellees were seeking to raise funds to construct a school building for the Searcy Special District, and not for an auditorium, and that the school district was using its efforts to have said building constructed for the school district; that said contemplated building was to be upon school property and grounds of said district; that the city and school district do not comprise the same territory and citizens; the district embraces the city and much other territory and citizens outside the limits of the city; that the property of said school district is mortgaged for a debt amounting to $123,000. It was also alleged that application had been made to the U. S. WPA, and that the WPA granted the application on condition that the school district would furnish $30,000 as its part of said building construction; that the said school district was not able to furnish the $30,000 and is now attempting, through said appellees, to have the City of Searcy lend its faith and credit to said proposal by issuing bonds under said ordinance 271; that the city of Searcy has not applied to the WPA for a grant

and that to permit the proposed election to be held and the issuance of bonds would be diverting the funds of the City of Searcy to the special school district in violation of law; that on April 25, 1938, the city passed an ordinance to submit to the vote of the people of the City of Searcy the question of issuing bonds to build a city hall and fire station; that said ordinance was approved by an election of the people and said building had been completed; that in said building there is a large auditorium sufficient to take care of the citizens of Searcy, and that said city has no use for any other auditorium, and that to construct another building with an auditorium would be for the sole use and benefit of the school district and would not be contiguous to the city hall; that said ordinance No. 271 is void because it was not read fully and distinctly three times as required by § 9562 of Pope's Digest; that said ordinance was pretended to be read the second and third times by reading only the title thereof, and not reading the same in full; that it is void for the further reason that it is in violation of the spirit and purpose of Amendment No. 13 to the Constitution. It is stated that unless the appellees are enjoined, there will be an irrevocable injury done appellants. It is also alleged that the ordinance authorizing said election and the notice published in pursuance thereof are fraudulent and fail to properly notify the electors of the city of the true purpose for which said election is called and the money proposed to be raised is to be used.

The appearance of the defendants was entered, and a demurrer filed. There were other interventions, answers and demurrers.

The issues, however, in the case are whether the city had authority under Amendment No. 13 to pass the ordinance, and if so, whether it was properly passed; whether the city had a right to erect an auditorium on leased grounds; whether the city had authority to erect the building on property that was mortgaged.

The election was held in pursuance of the proclamation by the mayor, and the following questions were submitted to the qualified electors to be voted on by them:

"(a) For bond issue for the purpose of constructing and equipping a city auditorium;

"(b) Against bond issue for the purpose of constructing and equipping a city auditorium."

There was cast in favor of said bond issue 478 votes, and against the proposal 54 votes.

In pursuance to the provisions of the ordinance, the mayor of the City of Searcy caused a proclamation to be published in a daily newspaper having a *bona fide* circulation in Searcy on November 11, 1939, declaring the result of said election.

Amendment No. 13 to the Constitution of the state of Arkansas, among other things, provides that "cities of the first and second class may issue by and with the consent of a majority of the qualified electors of said municipality voting on the question at an election held for the purpose, bonds in sums and for the purposes approved by such majority at such election as follows: . . . for the purchase of sites for, construction of, and equipment, of city halls, auditoriums," etc.

The amendment also provides for a special tax not to exceed five mills on the dollar in addition to the legal rate permitted, for the purpose of paying bonds so issued.

Of course, under this provision of the Constitution, only five mills can be levied in any year, and that means that five mills is the aggregate that can be levied. If the city has issued bonds and levied a tax for any other purpose, then it could only levy an additional tax which may not, together with the tax already levied, exceed five mills on the dollar, except for lighting and water purposes.

Under the authority of this amendment an ordinance may be passed by a city of the first or second class, authorizing the issuance of bonds and the levy of a tax not to exceed five mills for the payment of said bonds.

The city of Searcy, therefore, had the right, under this amendment, to pass ordinance No. 271.

It is contended, however, that said ordinance was not legally passed. Section 9562 of Pope's Digest provides how ordinances may be passed. It reads as follows:

"All by-laws, ordinances, resolutions or orders for the appropriation of money shall require for their passage or adoption the concurrence of a majority of the aldermen of any municipal corporation. All by-laws and ordinances of a general or permanent nature shall be fully and distinctly read on three different days, unless two-thirds of the members composing the council shall dispense with the rule. No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title."

It will be observed that the law requires the ordinance to be read fully and distinctly on three different days, unless two-thirds of the members composing the council shall dispense with the rule. It is not contended that the council did not properly suspend the rule.

Section 22 of art. V of the Constitution of the state of Arkansas provides how bills shall be passed by the legislature, and it states that every bill shall be read at length on three different days in each house, unless the rules be suspended by two-thirds of the house, when the same may be read a second or third time on the same day. The difference between the constitutional provision providing for the passage of bills in the house, and § 9562 providing for the passage of ordinances, is that in the house, when the rules have been suspended, the bill must still be read three times; but in the statute providing for the passage of ordinances, it simply states that two-thirds of the members may suspend the rule, and does not state, like the Constitution, that it shall be read again.

"Suspend," as defined by Webster, among other things means "to cause to cease, for a time, from operation or effect; as to suspend the *habeas corpus* act; to suspend the rules."

It, therefore, appears that the council had the right to pass the ordinance as it did, and that the ordinance was legally passed.

The next contention of appellants is that the city had no right to erect an auditorium on leased grounds. It appears from the record that the lease was for 99 years, and in the nature of things, the auditorium built now, would probably be unfit for use 99 years from now. Moreover, we know of no provision, either in the Constitution or the law, that requires the city to build an auditorium on ground which it owns. To build it on ground that is leased for 99 years, it seems, is unobjectionable, especially in view of the fact that there is no law requiring the city to own the land.

Attention is called in this connection to 3 McQuillin on Municipal Corporations, 706, 714. The reference to this authority at § 1208 contains a very short statement, that municipal corporations cannot purchase and hold property which is subject to a mortgage, where it has no power to encumber its property by mortgage either by common law or statute. Section 1215 expressly holds that when necessary, to promote its public purposes, the municipal corporation usually is empowered to become the lessee of real property for the benefit of its inhabitants. We do not think there is anything in 43 C. J. 20, referred to, that sustains the contention of the appellant.

It is contended by appellants that the city cannot lease property that is heavily mortgaged and issue bonds for the purpose of erecting an auditorium thereon. They cite *Halbut* v. *Forrest City*, 34 Ark. 246. In that case the court said: "This was not a legitimate town purpose, and if it had appeared that this was the sole object of the renting, the contract would be invalid. See case of *Jacksonport* v. *Watson*, 33 Ark. 704. This does not appear, however, either from the pleadings or evidence, and the proper presumption is, that it was used for town purposes also. Where the town may be authorized to rent a building for its own use, it will not vitiate the contract to allow it to be used for other purposes of a public nature."

Attention is next called to the case of *Lester* v. *Walker*, 177 Ark. 1097, 9 S. W. 2d 323. In that case we said: "A municipal corporation may be the owner of two classes of property. One class includes all property

essential to, or even convenient for, the proper exercise of municipal functions and corporate power. The other class includes all property held for general convenience, pleasure or profit. . . . Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation, of a private nature, unless restrained by charter or statute.''

The next case to which appellants call attention is *Fussell-Graham-Alderson Co.* v. *Forrest City,* 145 Ark. 375, 224 S. W. 745. There is nothing in this case, as we understand it, that in any way sustains the contention of appellants; but it contains the same statement quoted above from *Lester* v. *Walker.*

Attention is then called to the case of *Searcy* v. *Yarnell,* 47 Ark. 269, 1 S. W. 319. There is nothing in that case that in any way tends to support the argument of appellants.

Counsel discuss several other questions, but they do not affect the merits of this case, and we, therefore, do not discuss or decide them.

We hold that the city had a right to pass the ordinance and have an election and build the auditorium on leased grounds, and that the fact that it was under mortgage did not make it unlawful.

All the property of the school district is pledged for the payment of the mortgage, and we do not think under the facts in this case that the fact that the land leased is under mortgage affects the contract so as to prevent the municipality from constructing the auditorium as contemplated.

The decree of the chancellor is affirmed.