413 P.2d 571

**Ted L. GINN and Betty Jeanne Ginn,
Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona,
IN AND FOR the COUNTY OF PIMA, and
the State of Arizona, Respondents.**

**No. 2 CA–CIV 195.**

Court of Appeals of Arizona.

April 27, 1966.

See also 1 Ariz.App. 455, 404 P.2d 721.

Spaid, Fish, Briney & Duffield by Richard R. Fish and Arthur H. Miller, Tucson, for petitioners.

Darrel F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., Phoenix, for respondents.

HATHAWAY, Judge.

The petitioners seek by this proceeding in certiorari to annul an order of the Pima County superior court, sitting as a juvenile court, directing them to pay to the State of Arizona a certain sum for the support of their son for the period he was in the custody of the Arizona State Industrial School. The petitioners contend that the juvenile court was without jurisdiction to enter the subject order.

On October 23, 1957, petitioners' son was declared to be a delinquent child by the juvenile court and was ordered committed to the State Industrial School "until he

reaches the age of 21 years, unless sooner discharged by the Board of Directors of State Institutions for Juveniles." The order further recited the court's intention to retain jurisdiction to make such additional orders as might be appropriate. On July 3, 1958, the court entered an order that "a trust fund be made up and the parents are to pay Sixty ($60.00) dollars per month."

On July 16, 1958, the court entered the following order in haec verba:

"WHEREAS, Ted L. Ginn and Betty J. Ginn, husband and wife, hereinafter referred to as the Parents, and TUCSON FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation, hereinafter referred to as Association, have agreed to be governed by the provisions of this order; and

"WHEREAS, Paul Ginn, a minor child, is the son of said parents, and said minor child was by order of the Superior Court of the State of Arizona, in and for the County of Pima, sitting as a Juvenile Court, committed to the State Industrial School on the 23rd day of October, 1957; and

"WHEREAS, the Court has directed the Parents to pay to the State of Arizona the sum of Sixty Dollars ($60.00) per month for the support of said child while in the State Industrial School, but further provided that such payments might be abated during such time as the Parents would pay into Savings Account No. 38964 in said Association the sum of not less than Sixty Dollars ($60.00) per month, said Savings Account to be drawn upon only with the approval of said Court, and said monies to be used for the psychiatric and/or psychological treatment of said child after his release from the physical custody of the Arizona State Industrial School, and/or for the support of said child in a private institution for juveniles after such release, all as might be directed by said Court; and

"WHEREAS, the Parents have elected to abate said payments by the establish-ment of such a Savings Account and payments thereto,

"NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

"ONE—THAT the Parents will deposit with the Association, in a Savings Account, not less than Sixty Dollars ($60.00) per month, the first deposit to be made as of July 1st, 1958, and similar deposits to be due on the first day of each and every calendar month thereafter so long as their said son shall remain in the physical custody of the State Industrial School.

"TWO—THAT, except only as provided in paragraph numbered FOUR hereof, all monies so deposited under the provisions hereof shall be paid out or withdrawn, in pursuance of orders issued from time to time by the Superior Court of the State of Arizona, in and for the County of Pima, as a Juvenile Court, for the psychiatric and/or psychological treatment of said Paul Ginn after his release from the physical custody of the State Industrial School, and/or for the support of said minor child in a private institution for juveniles, after such release, and/or otherwise for the welfare of said minor, all as may be directed by said Court.

"THREE—THAT, in the event the State of Arizona should provide those confined to the State Industrial School with treatment by a qualified psychiatrist and a psychologist, the liability of the Parents to deposit in said Savings Account the sum of Sixty Dollars ($60.00) shall cease, it being the contemplation of the aforesaid Court Order of Commitment that in that event the Parents should be obligated to pay not less than the sum of Sixty Dollars ($60.00) per month to the State of Arizona, instead of depositing said monthly sum in said Savings Account.

"FOUR—THAT this Order shall cease and terminate upon the twenty-first birthday of the said Paul Ginn, or at the time

of his death, whichever is the sooner, and all monies remaining in the said Savings Account at the time of termination of this Order, as provided for in this paragraph, shall be paid to the Parents in equal shares; or in the event of the death of one of them, to the survivor of them, and if they both be deceased at such time, then all funds remaining in said Savings Account shall be. paid, one-half to the heirs of Ted L. Ginn, and one-half to the heirs of Betty J. Ginn.

"FIVE—THAT the Association agrees to notify promptly by mail the Pima County Juvenile Probation Department, 332 South Freeway, Post Office Box 5512, Tucson, Arizona, each and every time the monthly deposit is made by the Parents into the Savings Account provided for herein.

"DONE IN OPEN COURT THIS 16th day of July, 1958.

s/ JOHN F. MOLLOY
————————————
Judge

"We have read the foregoing Order, and we do hereby approve of, and agree to carry out the terms thereof.

"DATED this 24th day of July, 1958.

s/ TED L. GINN
————————————
Parent

s/ BETTY JEANNE GINN
————————————
Parent"

On May 25, 1960, the juvenile court ordered petitioners to appear on a certain date to show cause why they should not be required to pay a reasonable amount for the support of their child during such time as he had been and would continue to be in the custody of the Board of Directors of State Institutions for Juveniles. After a hearing duly held, the court took the matter under advisement and on January 3, 1961 entered an order directing the petitioners to pay the sum of $1,519.40 for the maintenance and support of their son in the Arizona State Industrial School from June 1, 1958 to July 11, 1960, said sum to be paid from the savings account established in 1958.

The petitioners' contention that the 1961 order is void is predicated on the premise that the juvenile court lost jurisdiction when it committed petitioners' son to the State Industrial School in 1957. They rely on the decision of In re Mendevil, 21 Ariz. 586, 193 P. 17 (1920) as authority for their position. The *Mendevil* case held that under the 1913 Code § 3567 (predecessor to A.R.S. § 8–233), the juvenile court's order awarding custody and care of a *dependent* child to a guardian terminated the guardianship and jurisdiction of the court. We do not believe, as petitioners urge, that *Mendevil* is controlling here, since the situation there concerned the effect of disposition of a dependent child. In the present case we are concerned with a *delinquent* child, therefore the judicial interpretation of the statute applicable in 1920 to dependent children is not relevant.

The pertinent statute is A.R.S. § 8–236 which provides in part:

"A. When jurisdiction has been acquired by the juvenile court of a child, the child shall continue under the jurisdiction of the court until he becomes twenty-one years of age, unless sooner discharged, except that from the time of admittance to the state industrial school or to an institution for girl juvenile offenders, a child shall be subject to the exclusive control of the board of directors of state institutions for juveniles until his absolute release."

There is no dispute as to the juvenile court's acquisition of jurisdiction of petitioners' child. The sole contention is that by virtue of the child's commitment to the industrial school, the fact that exclusive control of the child is vested by statute in the board of directors operates to terminate the jurisdiction of the juvenile court. If such be the construction of the statute, the juvenile court would have had no jurisdiction to order the petitioners to pay any sums of money after the child's commitment. We do not construe the statute to have this

meaning. "Jurisdiction" and "control," as set forth in A.R.S. § 8–236, can coexist. Webster's Third New International Dictionary defines *control* as "the power or authority to manage or guide." It is apparent that the legislature intended the board of directors to be the exclusive body to determine a delinquent child's readiness to be released from the industrial school. This makes good sense as the board is in a better position than the committing court to decide the child's fitness to resume his place in society.

Our Supreme Court of Arizona in the case of Application of Gault, 99 Ariz. 181, 407 P.2d 760, 764 (1965) has recently stated that "[o]nce acquired, the jurisdiction of the court over the child continues until he is 21 years of age unless sooner discharged." This pronouncement of the highest court of this state is adverse to petitioners' contention. Furthermore, if the court's jurisdiction terminated upon commitment to the industrial school, notice to the court of the child's release by the board, as required by A.R.S. § 8–313, would hardly be necessary.

If the legislature intended commitment to deprive the court of further jurisdiction of the juvenile, the proviso would have been worded to read "unless sooner discharged or committed to the state industrial school. * * *"[1] We hold, therefore, that notwithstanding petitioners' son was subject to the exclusive control of the board, the juvenile court had jurisdiction over him at the time the subsequent orders were entered.

■ Since the jurisdiction of the Juvenile court over a child is a prerequisite for the acquisition of jurisdiction over its parents, In re State in the Interest of Graham, 110 Utah 159, 170 P.2d 172, 178 (1946), the

juvenile court's jurisdiction was likewise a continuing one as to petitioners. The juvenile court has authority to make an order directing the parent of a child to contribute to his support such sum as the judge may determine. A.R.S. § 8–231, as amended. When a child concerning whom a petition has been filed in juvenile court appears to be in need of medical care, the court may order the parent to provide such care and in case of failure to so provide, may order the care to be provided at county expense and may adjudge that the person required by law to support the child pay part or all the expense of treatment. A.R.S. § 8–235.[2]

■ Petitioners do not deny their duty to support nor do they make an issue of their financial ability to pay $60 per month for the support and maintenance of their son. The July, 1958 order of the juvenile court evidences the court's reluctance to impose a dual burden upon petitioners, i. e., to provide both funds for psychiatric treatment of their child, if needed, *and* to pay for his support. As we read A.R.S. §§ 8–231, and 8–235, the legislature has conferred authority upon the juvenile court to order the parents to contribute to the child's support *and* to pay part or all of the expense of necessary medical treatment. Since (a) the petitioners' child had not been discharged by the juvenile court, (b) the court's jurisdiction over the child and petitioners had not terminated and (c) no statutory time limitation is imposed upon the court's power to direct payment for support and/or medical treatment, there was no error in the issuance of such orders subsequent to the child's commitment.

■ We note that the July 16, 1958 order contains a recital to the effect that the court had previously directed the parents to pay to the State of Arizona the sum of $60 per month for the child's support

---

1. See State v. Schrode, 119 Ind.App. 57, 83 N.E.2d 900 (1949) which held that under the Indiana statute providing for continuing jurisdiction until 21 years of age *unless discharged prior thereto or is committed to a correctional or state institution,* a juvenile court loses all jurisdiction over a juvenile after it has committed him to any state institution.

2. See In re Lewis, 172 Misc. 736, 15 N.Y.S. 2d 708 (1939), (juvenile court required mother to contribute to the cost of orthopedic shoes).

while in the industrial school but provided for abatement of such payments if such sums were paid into a savings account to be expended for treatment and/or support in a private institution. Petitioners claim that there had been no such prior order. The record discloses no written order to that effect and the clerk's minutes are silent as to same. We hold, however, that the recital in the formal 1958 order should be given force and effect. See Estate of Schuster, 35 Ariz. 457, 473, 281 P. 38 (1929). Recitals in an order are presumptive evidence of their truth, and when uncontradicted are conclusive. 60 C.J.S. Motions and Orders § 65g(2). Where, as here, the petitioners acknowledged and approved the July, 1958 order, they cannot now claim that the support aspect was not considered until 1961.

The juvenile court refrained from imposing an inordinate financial burden upon the petitioners in 1958 and in lieu of monthly support payments substituted monthly payments into a fund for prospective rehabilitation needs of the delinquent child. Since the monies deposited by the petitioners in accordance with the 1958 order were not expended for the purposes set forth therein, the need not having arisen, dictates of fairness would require that the monies be used to fulfill the petitioners' obligation to contribute to the support of their child while in the State Industrial School. Since the court had jurisdiction of the child and derivatively of the petitioners in 1961, the 1961 order to reimburse the State of Arizona for the child's support is not vulnerable to attack on the basis of a jurisdictional defect.

The order is affirmed.

KRUCKER, C. J., and JOHN P. COLLINS, Superior Court Judge, concur.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge JOHN P. COLLINS was called to sit in his stead and participate in the determination of this decision.