457 P.2d 956

ANONYMOUS, a Minor, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA; Honorable Jack G. Marks, Judge of the Superior Court, acting as Juvenile Judge, Respondents.

No. 2 CA–CIV 710.

Court of Appeals of Arizona.

Aug. 6, 1969.

Rehearing Denied Sept. 5, 1969.
Review Denied Oct. 21, 1969.

Legal Aid Society of the Pima County Bar Assn., Tucson, by Anthony B. Ching, Chief Trial Counsel, and W. Edward Morgan, Tucson, Co-counsel, for petitioner.

William J. Schafer III, Pima County Atty., Tucson, by William J. Augustine, Tucson, Chief Crim. Deputy, for respondents.

MOLLOY, Chief Judge.

These extraordinary writ proceedings seek review of a matter pending in juvenile court, Pima County. We have issued a writ of certiorari and alternative writ of prohibition, deeming appellate review at this juncture not inappropriate. *See* Caruso v. Superior Court in and for County of Pima, 100 Ariz. 167, 412 P.2d 463 (1966).

The juvenile court proceedings to date are as follows. On December 21, 1962, the petitioner was declared by the juvenile court to be a neglected dependent child. On August 23, 1968, by order of the juvenile court, he was removed from the custody of the Pima County Department of Public Welfare and placed in the custody of his natural mother. On September 12, 1968, a petition was filed in juvenile court alleging certain serious acts of delinquency on the part of the petitioner, who was then 17 years and 10 months of age, and requesting the court to adjudge and declare him to be a delinquent child. The petitioner was taken into custody at the detention facilities of the juvenile court center.

A hearing was scheduled for September 25, 1968, but petitioner's counsel moved for continuance of same to October 1, 1968. The court granted the motion and set the matter for hearing on October 8, 1968. The reason for the continuance was to afford counsel an opportunity to better prepare for the hearing. The October 8 hearing was postponed to October 9. At the commencement of the October 9 hearing, the juvenile court judge informed counsel that the Pima County Juvenile Probation Department had applied for a transfer of the matter to the "criminal court." The court informed counsel, therefore, that the only issue to be decided at the hearing was whether to "transfer" the minor. Petitioner's counsel challenged the court's "jurisdiction" to hold a "transfer" hearing subsequent to the filing of a petition. The juvenile court judge, however, did not agree, being of the opinion that the purpose of the hearing, *i. e.,* whether or not to transfer to adult court, was to decide whether the juvenile court should accept jurisdiction. Testimony was presented at this hearing pertinent to the minor's mental condition. Another hearing was subsequently held on November 26, 1968, at which psychiatric testimony and reports were presented. No testimony was taken that reflected on guilt or innocence as to the charges brought other than that which would have a direct bearing upon the mental condition of the petitioner.

The minute entry of the November 26 hearing contains the following recital:

"Counsel for minor waive adjudicatory hearing in this matter in favor of a commitment to State Institution if there be no transfer to Adult Criminal Court."

The minor's counsel also stipulated that the petitioner would be eighteen years of age on November 28, 1968. The matter was submitted to the court for decision, the minor to remain at the detention facilities pending disposition by the court. The fol-

lowing day, November 27, 1968, the juvenile court entered an order, finding that the minor was both mentally defective and mentally disordered within the meaning of A.R.S. § 8–235, subsec. B,[1] that he was in danger of injuring the person or property of others if permitted to remain at liberty, and concluded that suspension of criminal prosecution was appropriate as prosecution was not necessary for the protection of society. The order recited in pertinent part:

"* * * it is

"ORDERED AND ADJUDGED that, with respect to the allegations contained in the amended petition filed herein on September 30, 1968, the court suspends criminal prosecution; and it is further

"ORDERED AND ADJUDGED that the said [minor] is mentally defective, mentally disordered and mentally ill; and it is further

"ORDERED AND ADJUDGED that the said [minor] be confined in the Arizona State Hospital in Phoenix, Arizona, with the recommendation of this court that he be placed in the Maximum Security Unit thereof and that he remain at the said Arizona State Hospital until sufficiently restored to reason or otherwise discharged according to law; and it is further

"ORDERED AND ADJUDGED that the court retain jurisdiction, pursuant to § 8–236, Arizona Revised Statutes, over the person of [minor] until he shall attain the age of 21 years, subject to further order of this court and, provided [minor] be under the age of 21 years, that the said [minor] not be released from the Arizona State Hospital except after notice in advance to the Pima County Juvenile Court Center and to the Sheriff of Pima County given in writing not less than ten days prior to release in order that this court may conduct such further proceedings according to law as may be appropriate at the time of such release; * * *"

On April 3, 1969, a "petition for rehearing" was filed by the Pima County Juvenile Probation Department requesting the juvenile court, pursuant to Rule 60(c), Ariz. R.Civ.P., 16 A.R.S., to vacate its order of November 27, 1968, and to grant a rehearing on the question of "transfer" to adult court for criminal prosecution. On May 12, 1969, the juvenile court granted the motion for rehearing and directed that it be held on May 16, 1969. Upon the institution of these extraordinary writ proceedings, the juvenile court continued the May 16 hearing pending appellate disposition, and directed that the minor remain in the Arizona State Hospital until further court order.

The petitioner contends that the juvenile court is without jurisdiction to rehear the matter of transfer, and that such rehearing would constitute double jeopardy and violate principles of fundamental fairness.

Ariz.Const. art. 6, § 15, A.R.S., provides:

"The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. The judges shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and may, in their discretion, suspend criminal prosecution of such children. *The powers of the judges to control such children shall be as provided by law.*" (Emphasis added)

A.R.S. § 8–222 provides for the acquisition of juvenile court jurisdiction:

"A. Any person may, and a peace officer or probation officer shall, give to the juvenile court information in his possession that a child is delinquent, neglected or dependent. Thereupon the court shall make preliminary inquiry to determine whether the interest of the public

1. A.R.S. § 8–235, subsec. B reads:
"If it appears that a child concerning whom a petition has been filed in the juvenile court is mentally defective or mentally disordered, the court may commit the child to an institution authorized by law to receive and care for such children."

or the child requires further action. When practicable, the inquiry shall include a preliminary investigation of the home and environment of the child, his previous history, his physical, mental and moral well-being, and the circumstances of the offense committed, if any. *If the court determines that formal jurisdiction should be acquired, it shall authorize a petition to be filed invoking its jurisdiction in such form as it may prescribe.*

"B. The *powers of the court may be exercised upon the filing of a petition* by any resident of the county, or any peace officer or probation officer, alleging that a child is neglected, dependent or delinquent, and needs the care and protection of the court, without alleging the facts." (Emphasis added)

■ The question of whether or not criminal prosecution of a child under the age of eighteen years shall be suspended is left to the discretion of the juvenile court judge. Application of Vigileos v. State, 84 Ariz. 404, 330 P.2d 116 (1958); Burrows v. State, 38 Ariz. 99, 297 P. 1029 (1931); Eyman v. Superior Court in and for County of Pinal, 9 Ariz.App. 6, 448 P.2d 878 (1968). We have previously referred to the hearing on whether to suspend criminal prosecution as a "preliminary inquiry." Eyman v. Superior Court in and for County of Pinal, *supra;* Flynn v. Superior Court of Maricopa County, 3 Ariz.App. 354, 414 P.2d 438 (1966). The record discloses that this investigation would justify a conclusion that the petitioner suffered from a mental defect or disorder.

■■ It is our view that the juvenile court judge acted in these matters in accordance with the constitutional mandate of Ariz.Const. art. 6, § 15, *supra,* as implemented by A.R.S. § 8–235, subsec. B (see n. 1. *supra,* for quote). We conceive that the simultaneous suspension of criminal prosecution was intended to safeguard petitioner's interests since a finding of civil in-

2. Application of Gault, 387 U.S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967).

3. People v. Silverstein, 121 Cal.App.2d 140, 262 P.2d 656 (1953); Moquin v.

competency does not serve to avoid criminal prosecution. State v. Sheriff of Pima County, 97 Ariz. 42, 396 P.2d 613 (1964); State v. Buchanan, 94 Ariz. 100, 381 P.2d 954 (1963); McWilliams v. Justice Court, Tucson Precinct No. 1, 5 Ariz.App. 200, 424 P.2d 848 (1967).

■ As to petitioner's double jeopardy argument, there is substantial authority that the constitutional ban against double jeopardy prevents prosecution in the adult court for the same offense upon which an adjudication of delinquency was predicated. *See, e. g.,* Sawyer v. Hauck, 245 F.Supp. 55 (W. D.Tex.1965); United States v. Dickerson, 168 F.Supp. 899 (D.C.1958), *reversed on other grounds,* 106 U.S.App.D.C. 221, 271 F.2d 487 (1959); In re Holmes, 379 Pa. 599, 109 A.2d 523 (1954); Collins v. State, 429 S.W.2d 650 (Tex.Civ.App.1968); Garza v. State, 369 S.W.2d 36 (Tex.Cr.App. 1963). But, here, we have no adjudication of delinquency. Though most pre-*Gault* [2] authority regarded juvenile proceedings as civil in nature and therefore not provocative of double jeopardy bars,[3] we accept, without deciding, that in this post-*Gault* era, the Double Jeopardy clause applies to juvenile proceedings, at least insofar as the charges are serious enough to carry a risk of the child being placed in an institution for juvenile offenders. But it is our view that double jeopardy has not attached by reason of what has occurred in this juvenile's case. We see only pre-adjudicatory proceedings to carefully determine whether to treat this petitioner as a child as to the offenses charged, a procedure recommended by Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

In this state, all delinquent children or children accused of crime become subject to some degree of jurisdiction in the juvenile court whenever a petition alleging either neglect, dependency or delinquency is accepted by the court. One of the first considerations naturally presented to the court

State, 216 Md. 524, 140 A.2d 914 (1958); In re Santillanes, 47 N.M. 140, 138 P.2d 503 (1943).

when a delinquency petition is filed is to determine whether to retain jurisdiction, or to refuse to suspend criminal prosecution. State v. Shaw, 93 Ariz. 40, 47, 378 P.2d 487, 491 (1963). In other words, as one appellate court has indicated, when a child commits an offense, in effect he is exempt from the "criminal law" unless and until the juvenile court waives its jurisdiction. *See* Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (1961). As stated in State v. Shaw, *supra*:

> "The philosophy which inspired creation of the juvenile court, and statutes implementing it, is that the state recognizes that in the majority of cases involving anti-social behavior (including criminal offenses) on the part of the youthful offenders, there is both a responsibility and an opportunity for the state, through special treatment in a non-criminal proceeding, to redirect and rehabilitate these young people. This operates for the benefit of the individual, and for society as a whole. However, in many states, as in Arizona, it is also recognized that there are certain individuals still within the chronological classification as juveniles, for whom this special treatment is futile. The juvenile court therefore may refuse to continue its jurisdiction in such cases, and may remand these individuals for regular proceedings in the criminal court. Under the law in Arizona, until the juvenile court, which has exclusive jurisdiction of all delinquent children or children accused of crime, has considered the matter and decided that the particular individual is not one who will benefit from its special treatment, a child offender remains in the juvenile jurisdiction." 93 Ariz. at 46–47, 378 P.2d at 491.

Examination of the entire record of the juvenile court discloses on the part of the

juvenile court judge the exertion of considerable effort to ascertain whether or not the petitioner would benefit from retention of jurisdiction. There was no objection here by the juvenile or anyone in his behalf against the lack of speed in reaching this crucial decision. We see no finality in the order entered here—to suspend criminal prosecution—when the order is accompanied by an order for examination into the petitioner's mental status and is unaccompanied by an adjudication of delinquency.

■ The term "suspend," given its ordinary meaning, means nothing more than a temporary cessation, *i. e.*, a holding in abeyance. United States v. Showalter, 103 F. Supp. 806 (N.D.Calif. 1952); Vaughan v. City of Searcy, 199 Ark. 585, 135 S.W.2d 319 (1940); Sunny Brook Farms v. Omdahl, 42 Wash.2d 788, 259 P.2d 383 (1953); State ex rel. Currie v. McCready, 238 Wis. 142, 297 N.W. 771 (1941).

■■ The juvenile code makes no provision for granting a rehearing. However, when a cause is pending before the court, the court has inherent power to modify or vacate an order previously made during the pendency of the cause. Campbell v. Thurman, 96 Ariz. 212, 393 P.2d 906 (1964); 60 C.J.S. Motions and Orders § 62a. The juvenile court, under its "continuing jurisdiction" of petitioner, has authority to modify its orders, *see* A.R.S. § 8–236; Ginn v. Superior Court, 3 Ariz.App. 240, 413 P.2d 571 (1966).

Finding no merit to the petitioner's jurisdictional challenge of a contemplated rehearing,[4] the alternative writ of prohibition heretofore issued is quashed, and the order setting a hearing for the question of whether the suspension order should be terminated is affirmed.

HATHAWAY and KRUCKER, JJ., concur.

---

4. No contention is made by either party that the juvenile court's jurisdiction of the petitioner terminated upon his attainment of the age of eighteen years without an adjudication of delinquency. A recent decision of the Washington Supreme Court, under circumstances similar to those involved here, holds that juvenile court jurisdiction terminates if there has been no adjudication on the merits before age eighteen. *See* State v. Kramer, 72 Wash.2d 904, 435 P.2d 970 (1967), *cert. denied*, 393 U.S. 833, 89 S.Ct. 103, 21 L.Ed.2d 103; and *see* Burrows v. State, 38 Ariz. 99, 297 P. 1029 (1931).