[Crim. No. 8034. First Dist., Div. Four. Dec. 29, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE BROWN, Defendant and Appellant.

## COUNSEL

Herbert W. Yanowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Joe Brown appeals from a judgment entered after a jury found him guilty of murder (Pen. Code, § 187) in the killing of a San Francisco bus driver. Brown and two alleged coperpetrators, Lewis and McFarland, were brought before the juvenile court upon allegations that they came within the court's jurisdiction by reason of having committed the homicide. Before the jurisdictional hearing began, the probation officer indicated that, "if the allegations of the petition were found to be true, a motion would immediately be made to transfer [appellant and one other boy] to adult court for further proceedings pursuant to Welfare and Institutions Code section 707." The third boy, less than 16 years old, was too young to be subject to transfer.

At a consolidated hearing as to all three boys, evidence was introduced tending to show that appellant committed the acts alleged in the petition. A probation report was presented to the court; it stated the conclusion and recommendation that appellant was "not a fit and proper subject" of the juvenile court, and should be transferred to the superior court for trial as

an adult. At the close of the evidence, the court declared that "each of [the juveniles] is a person described in Section 602 of the Welfare and Institutions Code," and went on to declare that appellant "would not be amenable to the care, treatment and training programs of the Juvenile Court." No findings were entered in the minutes, as required by Welfare and Institutions Code section 702 (see *In re Steiner* (1955) 134 Cal.App.2d 391 [285 P.2d 972]), to support a determination that appellant came under the juvenile court's jurisdiction. Instead, a finding was entered in the minutes under section 707, determining that appellant was not a proper subject for juvenile court treatment. Thereupon the court directed the commencement of criminal proceedings against appellant.

Appellant was subsequently indicted; his plea of once in jeopardy failed, and a jury found appellant guilty of murder in the first degree. The present appeal is from the ensuing judgment of life imprisonment.

■ Appellant contends that jeopardy attached within the meaning of the Fifth and Fourteenth Amendments of the United States Constitution when the court entertained proceedings on the juvenile court petition, and that appellant's later prosecution as an adult was therefore impermissible as putting him in jeopardy for a second time. The argument is that Welfare and Institutions Code section 707 is unconstitutional on its face because it specifically authorizes such proceedings.

Although the double jeopardy clause of the Fifth Amendment has been held a "fundamental ideal in our constitutional heritage," applicable to state proceedings by virtue of the due process clause of the Fourteenth Amendment (*Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 716, 89 S.Ct. 2056]), the concept of jeopardy traditionally applied only as to successive criminal prosecutions. (*Helvering* v. *Mitchell* (1938) 303 U.S. 391, 398-399 [82 L.Ed. 917, 921-922, 58 S.Ct. 630]; *Gollaher* v. *United States* (9th Cir. 1969) 419 F.2d 520, 524; see *People* v. *Reynoso* (1966) 64 Cal.2d 432 [50 Cal.Rptr. 468, 412 P.2d 812]; *People* v. *Levy* (1957) 151 Cal.App.2d 460, 463 [311 P.2d 897].)

In *People* v. *Silverstein* (1953) 121 Cal.App.2d 140 [262 P.2d 656], the Court of Appeal held that since the purpose of the juvenile court laws is "to save minors from the rigors of the criminal law" and to provide beneficial and corrective training, and since double jeopardy has strict application to criminal prosecutions, "the constitutional provisions against double jeopardy do not apply to this case, for the reason that the proceeding in the juvenile court was not a criminal prosecution." (*Id.* at pp. 142-143.) It may be questioned whether the *Silverstein* analysis remains valid in light of *Re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]. There the United States Supreme Court declared that, for purposes of determining whether

the fundamental requirements of due process apply to a juvenile court's jurisdictional hearing, "[a] proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." (387 U.S. at p. 36 [18 L.Ed.2d at p. 551].) The court reviewed the beneficial and non-criminal purposes of the juvenile court laws which were mentioned in *Silverstein* and concluded, nevertheless, that "[t]here is no material difference in this respect between adult and juvenile proceedings of the sort here involved." (387 U.S. at p. 36.) Also see *Re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] where it was held that the requirement of proof beyond a reasonable doubt (which, like double jeopardy, had formerly been applied only to criminal proceedings) applied to the juvenile jurisdictional hearing. The court again reviewed the same *parens patriae* ideas relied on in *Silverstein,* but concluded that "[w]e made clear in [*Gault*] that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' " (397 U.S. 358 at pp. 365-366 [25 L.Ed.2d at p. 376].)

These expressions by the United States Supreme Court raise grave doubts as to the vitality of the *Silverstein* approach. (Cf. *United States* v. *Dickerson* (D.C. 1958) 168 F.Supp. 899, reversed on other grounds *United States* v. *Dickerson,* 271 F.2d 487 [106 App.D.C. 221]; *Anonymous* v. *Superior Court* (1960) 10 Ariz.App. 243 [457 P.2d 956]; *Tolliver* v. *Judges of Family Court* (1969) 59 Misc.2d 104 [298 N.Y.S.2d 237]; *Collins* v. *State* (Tex.Civ.App. 1968) 429 S.W.2d 650.)

Assuming the applicability to juvenile proceedings of the constitutional prohibition against double jeopardy, the effect thereof on the proceedings against appellant must be examined. We note preliminarily that learned authorities have suggested that "[o]nce the adjudicatory hearing begins, the child is in fact 'in jeopardy,' and to transfer him to criminal court for another trial on the facts alleged in the petition would constitute a deprivation of due process of law. [Citations.]" (National Council on Crime and Delinquency, Council of Judges, Model Rules for Juvenile Courts (1969) rule 9 and comment, p. 22; see also Sheridan, William H., Family and Juvenile Court Acts (1969) U.S. Gov. Printing Office, Washington, Children's Bureau Publication 472, p. 31; Handbook of the National Conference of Commissioners on Uniform State Laws, Uniform Juvenile Court Act (1968) § 34, subd. (a), p. 270.) We have concluded, however, that the California statute does not permit double jeopardy in a case such as ours.

Under Welfare and Institutions Code section 701, the court is first to

consider, at the jurisdictional hearing, "only the question whether the minor is a person described by [section] 602." It is provided by section 702 that "[a]fter hearing such evidence, the court shall make a finding, *noted in the minutes of the court,* whether or not the minor is a person [coming within the court's jurisdiction]." (Italics added.) Section 702 (and later sections) go on to provide for further and separate proceedings to decide upon placement after adjudication has occurred. (Cf. *In re Corey* (1968) 266 Cal.App.2d 295 [72 Cal.Rptr. 115].) It is then provided in section 707 (in language which might sequentially be better placed before the dispositional provisions of section 702) that "[a]t any time *during* a hearing upon a petition . . . when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to . . . the facilities of the juvenile court . . . the court may make a finding *noted in the minutes of the court* that the minor is not a fit and proper subject to be dealt with under [the Juvenile Court Law]. . . ." (Italics added.) Thereupon, criminal proceedings are to be commenced. When the statutes are so compared, it is seen that the Legislature has provided a channel of adjudication which may be described as having a downstream fork at the point where unfitness may be determined under section 707. That determination is to be made not after juvenile court jurisdiction has been established but *during* the jurisdictional hearing. Therefore the consequence of the determination, when viewed before the commencement of a proceeding, is not to permit criminal proceedings to be brought against one who has already suffered deprivation of liberty as a result of a determination of wardship; rather, it is to divert the "unfit" minor into a procedural stream which may result in criminal punishment but not in renewed detention as a juvenile.

Notwithstanding the doctrines expressed in *Re Gault, supra,* the deprivations of liberty and other personal and civic disadvantages which may flow from conviction of crime, are substantially more severe than those which may be imposed under the Juvenile Court Law. It was therefore appropriate for the Legislature to establish, in the criminal "channel" which has just been described, a screen (the full protections of criminal procedure, including the right to trial by jury) which may (by a "not guilty" verdict) exempt a young person from the rigors of criminal penalties even though he has been found unfit for the juvenile court. To suggest that it would be double jeopardy to put back into juvenile court a young person who had been transferred to adult court under section 707 and then been found not guilty, is not to say that double jeopardy is inherent in a procedural scheme which provides for no more than one adjudication which may lead to confinement.

Appellant contends, nevertheless, that the order transferring him to adult

court under section 707 was invalid because it was not made *during* the jurisdictional hearing. This contention is contrary to the record. It is true that the hearing which resulted in appellant's transfer was consolidated with hearings having to do with his two companions and that, as to one of the boys, juvenile court jurisdiction was established and maintained at the end of the hearing. (*In re R. L.* (1969) 3 Cal.App.3d 707 [83 Cal.Rptr. 81], vacated on *Winship*[1] grounds and appeal reinstated June 11, 1970.)▮ But as to appellant, although the court declared orally that the jurisdictional allegations of the petition were true, there were no findings "noted in the minutes" to terminate the jurisdictional hearing. Rather than make such findings, the court, after hearing evidence bearing on appellant's fitness under section 707, made a finding of unfitness (which was duly "noted in the minutes," as required by section 707). We conclude that the ensuing criminal prosecution was not contrary to the statute and did not expose appellant to double jeopardy.

▮ Appellant complains that neither he, his counsel, nor his parents received written notice that the probation department and the prosecutor intended to move, under section 707, for a transfer to adult court. Conceding that the statute does not prescribe notice, appellant contends that due process requires such notice. But appellant and his counsel, having known for several days that transfer would be requested, entered into the hearing without objection. Appellant cannot be heard to complain of inadequate notice when, represented by counsel, he participated in the hearing without making any mention of his present contention or asking for time to prepare.

▮ Appellant contends that there was insufficient evidence to support the finding that he was not amenable to the care, treatment, and training program available through the juvenile court. Appellant's arguments center about the contents of the behavioral report submitted to the juvenile court by the probation officer, as required under section 707. It is true that section 707 provides that "the offense, in itself, shall not be sufficient to support a finding [of unfitness]." But the court is not prohibited from giving any thought to the circumstances of the offense—circumstances which, in this case, the court could reasonably consider unpromising for juvenile court treatment. Here the court also had before it a detailed report from the probation officer (unfairly condemned by appellant as a mere "rap sheet") which showed an established pattern of very serious delinquent behavior. There was ample evidence to support the order of transfer.

We proceed now to consideration of certain contentions which have to do with the criminal trial.

---

[1] *Re Winship, supra,* 397 U.S. 358 [25 L.Ed.2d 368].

█ At trial, Arthur Givens testified for the prosecution, giving very damaging evidence concerning appellant's involvement in the crimes charged, including appellant's admission that he had tried to shoot the victim through the heart. Givens admitted that he had made a statement to the police only after he had himself been arrested, and that he hoped thereby to help himself. It was also established that Givens had previously been convicted of burglary, and was on parole from state prison when he was arrested. Counsel for appellant then sought to show that when Givens was arrested certain firearms were found in his house; that possession of firearms violated a condition of his parole; and, by implication, that hope of lenient treatment regarding his parole violation influenced his testimony at least as much as his fear of being convicted of a new offense. The court sustained the prosecution's objection because, even if hope of leniency might have influenced Givens' testimony, the prosecuting authorities had no power to control disposition of the parole violation.

It is true that the rejected evidence would have had some bearing on Givens' credibility. █ Impeachment by showing improper motive depends on *the witness'* state of mind; the actual power of the authorities to aid or harm him is not conclusive. (Cf. *People* v. *Pantages* (1931) 212 Cal. 237, 258 [297 P. 890]; see 2 Witkin, Cal. Evidence (2d ed. 1966) § 1231, p. 1138.) █ Although it was therefore error for the trial court to restrict the impeachment of Givens' testimony, no prejudice appears. The more powerful influence upon Givens, of being presently in the clutches of the prosecution under new charges, was fully disclosed; at the same time Givens' story was strongly corroborated, e.g., by ballistic analysis of the murder weapon.

Other contentions advanced by appellant, regarding evidentiary rulings and jury instructions, are so clearly unmeritorious as to require no discussion.

The judgment is affirmed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied January 15, 1971, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1971.