Wayne Henry GARRISON, a minor under 18 years of age, to-wit: 14 years, Petitioner,

v.

The Honorable Joe JENNINGS, Judge of the District Court, Tulsa County, Respondent.

No. O–74–400.

Court of Criminal Appeals of Oklahoma.

Dec. 3, 1974.

Art Fleak, Jr., Public Defender, Tulsa, for petitioner.

Terry Malloy, Legal Intern, Juvenile Div., Tulsa, for respondent.

OPINION AND DECISION

BRETT, Judge:

This is an original proceeding wherein petitioner, a minor of fourteen years of age, is seeking to prohibit The Honorable Joe Jennings, Juvenile Court Judge of the Tulsa County District Court, from certifying him as an adult to stand trial for the crime of murder. The certification hearing was continued in order that petitioner might seek relief in this Court by way of the Writ of Prohibition.

On November 2, 1972, a petition was filed in the Tulsa County Juvenile Court, Case No. JFJ–72–759, seeking to have petitioner adjudicated to be a "delinquent." That petition recites as the basis for such adjudication that the juvenile is thirteen years of age and charges the following: "That the above named Wayne Garrison is a delinquent child living in Tulsa County, Oklahoma. That said child did, on or about October 30, 1972, unlawfully strangle Dana Dyan Dean by means of a light blue cloth tied around the neck of said victim, said child thereby causing Dana Dean to languish and die as a result of this strangulation."

On November 3, 1972, at the request of the State and the attorney for petitioner, the Juvenile Court entered an order transporting petitioner to Central State Hospital at Norman, Oklahoma, for observation, evaluation, and report. The petition seeking delinquency adjudication remained pending. On December 22, 1972, the day the juvenile was returned from the State Hospital, a hearing was had before The Honorable James H. Griffin, Judge of the Juvenile Court.

Speaking to the prosecutor, the Judge inquired, "The petition alleges delinquency. You advised me previously, Mr. Wooley, at this time you would like to amend the petition to read that Wayne is a child in need of supervision." The prosecutor replied, "That's right, your Honor." Speaking to the juvenile's counsel, the court asked, "To

the petition as amended, what do you say?" Counsel replied, "WE WILL STIPULATE TO THE ALLEGATIONS." (Emphasis added.) The Juvenile Judge stated in part: "The Court finds the allegations of the petition to be true. . . . " The Juvenile Court Judge entered an order the same day, December 22, 1972, which recites that the juvenile is thirteen years of age; sets forth that the juvenile was represented by Mr. Jay Gregg, Public Defender, and states: "The Court finds that the petition filed herein is amended to Child in Need of Supervision. And the Court further finds that the amended petition filed herein is true and that the above named child should be placed in the custody of the Central State Griffin Memorial Hospital, Norman, Oklahoma, for treatment, with the Court to be notified prior to his release. IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED BY THE COURT that the above named child, is within the purview of the Juvenile Code as a child in need of supervision. . . ." Thereafter, the juvenile was transported to Central State Hospital for treatment in the Phil Smalley Children's Treatment Center at Norman, Oklahoma.

Almost two years later the Tulsa County District Attorney's Office filed an "Amended Petition" in the Tulsa County Juvenile Court, in the same case concerning the same juvenile. That petition sets forth that the juvenile is fourteen years of age and seeks to have him adjudicated to be a "delinquent" child, premised upon the same facts, but stated in more detail, than was the first petition. The amended petition alleges:

"That the above named child found living in Tulsa County Oklahoma, is a delinquent child due to the fact that he did, on or about the 31st day of October, 1972, unlawfully, willfully, maliciously and intentionally without authority of law and with a premeditated design on the part of said child to effect the death of a human being, to wit: one Dana

Dyan Dean, did then and there choke, strangle and suffocate and stop the respiration of the said Dana Dyan Dean by placing a light blue cloth approximately one inch wide and 12 inches long around the neck of said Dana Dyan Dean and did then and there asphyxiate, kill and cause and effect the death of said human being. .Further, said offense occurred in Tulsa County, Oklahoma, and further, due to the above, the State of Oklahoma requests that Wayne Henry Garrison be certified to stand trial as an adult."

Counsel for the juvenile, Mr. Art Fleak, Jr., of the Public Defender's Office, filed a "Motion to Quash Petition and To Dismiss." The motion sets forth that the same facts were adjudicated on December 22, 1972, in case number JFJ–72–759, before Judge James H. Griffin; it also sets forth sufficient statements of fact, if applicable, to establish a plea of former jeopardy; and counsel asserted that any effort to put the juvenile to trial on said charge after twenty months, while the juvenile was incarcerated on the Juvenile Court Order, would violate his constitutional right to a speedy trial; and prayed that the amended petition be dismissed.

On June 25, 1974, a hearing was had on the amended petition before the Juvenile Court Referee, who entered findings to show the representation of the parties, and recited, in part, the following:

" . . . that the adjudication by this Court on December 22, 1972, was based on a petition orally amended 'to read,— child in need of supervision.' That the same stipulation or evidence was not presented to prove the amended petition as would have been necessary to prove the original allegations of delinquency. That on December 22, 1972, pursuant to Title 10 O.S. 1116 and without objection of the parties, said child was placed at Central State Hospital for treatment. That on that date said child was represented by the Public Defender, who at no time has made a demand for trial.

Therefore, the Motion to Quash and Dismiss the Amended Petition filed herein is denied."

The Referee found further "that there is prosecutive merit to the State's Amended Petition filed herein June 13, 1974." The Referee's recommendation to the Court was that the juvenile be continued as a ward of the court, and that "the hearing to determine certification of said child be set for June 25, 1974." The Juvenile Court Judge accepted the Referee's recommendation, and entered an order setting the certification hearing for a date certain, but stayed that order to enable petitioner to seek issuance of the writ of prohibition by this Court.

■ Prohibition is an appropriate remedy to prevent retrial once a defendant has been in jeopardy. State ex rel. Waters v. Lackey, 97 Okl.Cr. 41, 257 P.2d 849 (1953); Hill v. Graham, Okl., 424 P.2d 35 (1967); Sussman v. District Court of Oklahoma County, Okl.Cr., 455 P.2d 724 (1969). In accordance with Supreme Court Rule 1.10(c)(2), pertaining to certification of juveniles, this matter is properly before this Court.

■ This matter presents the following question: Was the minor placed in jeopardy, within the meaning of the constitutional protections against twice being placed in jeopardy for the same offense, in the June 14, 1974, proceedings?

The answer must be YES. Article 2, Section 21, of the Oklahoma Constitution provides the following:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. *Nor shall any person be twice put in jeopardy of life or liberty for the same offense.*" (Emphasis added.)

■ The bar to double jeopardy provided in the Fifth Amendment to the United States Constitution is made applicable to state proceedings by virtue of the Fourteenth Amendment. See: Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969). The United States Supreme Court provided in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that juveniles are entitled to the fundamental protection of the Bill of Rights in proceedings that may result in confinement or other sanctions, whether the state labels these proceedings "criminal" or "civil."

The District Attorney argues that jeopardy could not have attached, because a "child in need of supervision," (CHINS) charge is not a lesser included offense to the charge that a child is "delinquent." This argument is premised upon the statutory definitions of the two terms and has no bearing whatsoever on the procedural aspects with which we are here concerned. We are here concerned with whether or not this person is being twice put in jeopardy of life or liberty for the same offense. There can be no doubt whatsoever but that he is.

In the instant case, on November 2, 1972, a petition was filed with the juvenile court asserting that the juvenile had committed an offense, which if committed by an adult would constitute a crime. No information was on file in the district court alleging that petitioner had committed a crime. By the facts contained in the petition, the juvenile court determined that it had jurisdiction to consider the petition, and delivered the juvenile to the State Institution for psychiatric evaluation. Between that date and December 22, 1972, the Juvenile Judge received sufficient information concerning the child and had some discussion with both counsels in the case to warrant his entertaining an amendment to the petition pertaining to what DISPOSITION should be made of the child, but that amendment did not change the allegations asserted to show that the child came WITHIN THE PURVIEW OF THE JU-

VENILE ACT. On December 22nd the court entered the order that the "child is within the purview of the Juvenile Code."

It must be borne in mind that the Juvenile Court had but one set of allegations before it when deciding whether or not the child came within the purview of the act. 10 O.S.1971, § 1112(b) makes the provision that the Juvenile Court may take one of two courses of action after properly investigating a delinquency charge. The court may:

(1) ". . . in its discretion continue the juvenile proceeding;" or,

(2) ". . . it may certify such child . . . for proper criminal proceedings. . . ."

■ Speaking through Judge Bliss, and referring to that section of the statutes, this Court held in Alford v. Carter, Okl. Cr., 504 P.2d 436, 440 (1972):

"The statute is clear and unambiguous. It makes the certification an act within the discretion of the trial judge."

In the instant case the Juvenile Judge followed the first course of action and made a de facto determination that petitioner was a juvenile delinquent, and determined that he was within the purview of the Juvenile Code and committed him for treatment in the Children's Treatment Center at Norman, Oklahoma. When the Juvenile Court makes a finding that a child comes within the purview of the Juvenile Code, as was done in this case, jeopardy attaches.

In Coleman v. Superior Court in & for County of Pima, 110 Ariz. 386, 519 P.2d 851 (1974), the Supreme Court of Arizona held that the superior court's commitment of a child to the State Hospital in lieu of criminal prosecution, although the child was never formally adjudicated a delinquent, was a de facto determination to treat the child as a juvenile delinquent, thus in effect placing the child in jeopardy, thereby precluding subsequent prosecution for the same offense. In reaching its conclusion, that court stated:

"Having decided that the petitioner should be given special treatment, such treatment was made in lieu of criminal prosecution rather than in addition to it. Under the circumstances we conclude that the Superior Court made a de facto determination to treat the petitioner as a juvenile delinquent. Thus the petitioner was not only placed in jeopardy in the juvenile court but was in effect convicted and punished. Any attempt to try him as an adult would not only subject him to the harassment of an additional judicial proceeding but would subject him to the risk of being punished twice for the same offense. Prosecuting the petitioner as an adult would violate the conception of fundamental fairness which is the basis for juvenile court proceedings and the constitutional protection against double jeopardy."

10 O.S.1971, § 1114, makes the provision for final jurisdiction of the Juvenile Court. It provides:

"If the court finds that the allegations of the petition are supported by the evidence, and that it is in the best interest of the child and the public that he be made a ward of the court, the court shall sustain the petition, and *shall make an order of adjudication,* setting forth whether the child is delinquent, or in need of supervision, . . . and shall adjudge the child as a ward of the court." (Emphasis added.)

In this case the Juvenile Judge clearly adjudicated the child to be a ward of the court, within the purview of the Juvenile Act; and the court further determined that he was a child in need of supervision. Consequently, we are bound to find that the court determined that it had jurisdiction, considered the only petition before the court, found the allegations contained in the petition to be true, and adjudicated the child to be one in need of supervision. Thereafter, in providing for proper disposition the court ordered the child to be placed in the Phil Smalley Children's Treatment Center. That disposition order deprived the child of his liberty for an indefinite period of time, but by provisions of the act not beyond his 21st birthday.

In Jones v. Breed, 497 F.2d 1160, 1165 (9th Cir. 1974), the United States Circuit Court of Appeals held:

"We hold that the Fifth Amendment guarantee of double jeopardy is fully applicable to juvenile court proceedings."

.   .   .   .   .   .

"When the juvenile court can, on the basis of the delinquency hearing, impose severe restrictions upon the juvenile's liberty, we believe jeopardy attaches."

Jones was a seventeen old male, who was apprehended for the crime of robbery. A petition was filed in the juvenile court, alleging that Jones, a minor, had committed an act which, if committed by an adult, would be a violation of the California Penal Code. The Juvenile Court found that Jones had committed the robbery and that Jones was under the jurisdiction of the Juvenile Court and continued the proceedings to a later date to determine proper disposition of Jones. At the subsequent hearing, the Juvenile Court Judge announced that he would direct the District Attorney to prosecute Jones as an adult. Upon an objection by Jones that he had assumed the hearing was to determine disposition of Jones and not to determine certification, the court granted a one week continuance. At the later hearing, Jones contended that he had already been adjudicated a person described by the California Juvenile Code, and, therefore, certification to be "tried" again would place him twice in jeopardy. The court denied that contention and certified Jones to stand trial as an adult. The former jeopardy argument was again raised and denied at trial, and Jones was convicted. The petition for habeas corpus in the United States District Court was denied, but the Ninth Circuit Court of Appeals reversed and granted the writ, thereby returning Jones to the Juvenile Court jurisdiction.

In the Jones decision, the Ninth Circuit Court of Appeals recited:

"We must first resolve whether the protection of the Fifth Amendment 'nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb   .   .   .' applies to juvenile court proceedings. Certainly the constitutional mandate makes no distinction between adults and juveniles. See In re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)."

After entering into a historical discussion of the juvenile procedures, the court refers to McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), which is also cited by respondent in the instant case as limiting the constitutional protections a child is entitled to receive in juvenile proceedings. The United States Court of Appeals continued:

"In McKiever, the [United States Supreme] Court rejected the contention that a juvenile court must provide a jury trial   .   .   .   . But that case does not dictate the nonapplicability of double jeopardy. Whether a jury is required deals with the method of juvenile adjudication; whether double jeopardy applies goes to the very core of basic application of rights and does not affect how the juvenile is tried."

In Jones v. Breed, supra, the Court cites Fain v. Duff, 488 F.2d 218 (5th Cir. 1973), wherein Fain, a sixteen year old boy, was arrested for breaking into the home of a woman and raping her. Fain was adjudged delinquent by a Florida Juvenile Court and was committed to the Division of Youth Services for an indeterminate period not to extend beyond his 21st birthday. Later, Fain was indicted by a grand jury alleging the same act of rape on which the juvenile adjudication was based. The Florida Circuit Court Judge dismissed the indictment on the grounds of former jeopardy. The State appealed and that order was reversed by the Florida Court of Appeals. That order was appealed and the Florida Supreme Court affirmed the Court of Appeals, holding former jeopardy was not applicable. Thereafter Fain sought relief in the Federal Courts. The United States District Court granted Fain's writ of habeas corpus and the State appealed to the United States Court of Appeals.

In affirming the U. S. District Court Order, the United States Court of Appeals, Fifth Circuit, stated:

"Although commitment to the Division of Youth Services may result in the juvenile being allowed to return to his home, it may also result in incarceration until age 21. Fain's commitment to the division resulted from his having been found delinquent. And his being found delinquent resulted from his having violated a criminal law of the State of Florida. F.S.A. § 39.01(9). Thus a violation of the criminal law may directly result in incarceration. This is a classic example of 'jeopardy.'"

In the instant case, petitioner continues to be incarcerated for the alleged commission of the crime of murder, though it be a children's center.

Several states have held that jeopardy attaches in juvenile court proceedings. Arizona: Anonymous v. Superior Court, 10 Ariz.App. 243, 457 P.2d 956 (1969); Idaho: State v. Gibbs, 94 Idaho 908, 500 P.2d 209 (1972); Iowa: State v. Halverson, 192 N.W.2d 765 (Iowa 1971); Texas: Collins v. State, 429 S.W.2d 650 (Tex.Civ. App.1968); California: Richard M. v. Superior Court, 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664 (1971).

Therefore, considering the facts presented to this Court, we find that petitioner was properly before the juvenile court, that an adjudication was entered, premised upon the only petition before the court, and petitioner has been adjudicated a ward of the juvenile court, and jeopardy thereby attached. This becomes apparent from the Juvenile Court Referee's recommendation to the court that the juvenile be continued as a ward of the court.

We do not attempt to reach the question of denial of speedy trial.

We therefore hold that jeopardy did attach in petitioner's juvenile proceedings and that further action on behalf of the prosecution to cause petitioner to be certified to stand trial in the Tulsa County District Court as an adult, for the alleged act of causing the death of Dana Dyan Dean, is barred by the constitutional provisions of former jeopardy; and therefore that the writ of prohibition should issue as prayed for.

Writ granted.

BLISS, P. J., concurs.

BUSSEY, J., specially concurs.

BUSSEY, Judge (specially concurs):

I concur with the decision rendered in this case, based upon the unusual facts and circumstances. Our decision today is, by its very nature, limited to these facts and circumstances, and should not be given any broader application than the facts which give rise to it.