433 P.2d 989

Amanda Gonzales McCLENDON, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA, and Arthur Gonzales, real party in interest, Respondents.

No. 2 CA–CIV 478.

Court of Appeals of Arizona.

Nov. 28, 1967.

———◆———

McDonald & Rykken, by John R. McDonald, Tucson, for petitioner.

Jose del Castillo, Tucson, for respondents.

MOLLOY, Judge.

The petitioner has applied to this court for a writ of prohibition, seeking to prohibit the respondent-court from proceeding further in a pending cause insofar as the proceeding might affect the care, custody and control of a minor child, aged thirteen years. This petition for special writ presents problems arising from inconsistent orders as to the custody of this child entered by the same court in two different pending causes, the one a divorce action and the other a juvenile proceeding.

Consideration of the question of jurisdiction necessitates an outline of the antecedent judicial proceedings. In 1964, the petitioner was granted an absolute divorce from Arthur Gonzales, the responding real party in interest. The care, custody and control of the two minor children of the parties, subject to reasonable visitation rights on the part of the father, was awarded to the petitioner, the natural mother.

On August 17, 1967, the superior court in Pima county, in a juvenile proceeding, entered its order adjudicating one of said children, hereinafter referred to as M——, a delinquent minor child. The order recited:

"Now, therefore, the said child is declared and adjudged to be a delinquent minor child within the meaning of the

statutes of Arizona, and said minor is hereby placed on probation under the supervision and control of the probation officer of Pima County, Arizona, for an indefinite period, subject to the following conditions:

"That you be placed in the custody of your parents, Mr. and Mrs. Elworth McClendon [stepfather and natural mother] * * *.

* * * * * *

"It is ordered that a review hearing of this matter will be held in Thirty (30) days; further * * *."

On September 19, 1967, before any "review hearing" was had in the juvenile court, Arthur Gonzales filed a petition in the divorce action, seeking to have the children's custody changed, on the grounds of the petitioner's "gross negligence" in taking care of them. An order was entered in superior court on the same day which, *inter alia*, ordered the petitioner to deliver M—— to the immediate temporary custody of her aunt, authorized a physical examination of the minor, and ordered the petitioner to appear on October 2, 1967, to show cause why said minor should not be removed from the petitioner's custody and awarded to the custody of Arthur Gonzales, or, in the alternative, to the custody of her aunt.

On September 21, 1967, a juvenile court hearing was held in the proceeding therein pending relative to M—— and an order was entered the same day which recited, in pertinent part:

"Ordered that the care, control and custody of * * * [M——] be with her mother, Amanda McClendon, until further order of this Court, notwithstanding the provisions of the ex parte temporary restraining order issued on September 19, 1967, in the action entitled 'Amanda Gonzales, Plaintiff, v. Arthur Gonzales, Defendant', in the Superior

Court of the State of Arizona in and for the County of Pima, No. 74175 [the divorce case], as the Juvenile Court is exercising its exclusive jurisdiction over * * * [M——], heretofore on August 17, 1967, adjudicated as a delinquent minor child, pursuant to Article 6, Section 15, Constitution of Arizona, and Section 8–202A, Arizona Revised Statutes; and it is further

"Ordered that the temporary custody of * * * [M——] heretofore placed with Mary G. Granillo [the aunt] pursuant to the provisions of the aforesaid ex parte temporary restraining order be, and the same hereby is, forthwith terminated."[1]

On October 9, 1967, the superior court in the divorce cause commenced to hear testimony pertaining to the petition for change of custody as to both children. The petitioner objected to the court's jurisdiction to conduct a hearing upon the matter of the custody of M——, and this objection was denied. A further hearing was conducted on October 16, 1967, and the matter was scheduled for further hearing on October 20, 1967, whereupon the petitioner invoked the aid of this court by filing a petition for a writ of prohibition.

We are called upon to determine whether the superior court jurisdiction, in the divorce proceeding, as to the custody of M——, was terminated by virtue of the juvenile court's acquisition of jurisdiction.

Ariz.Const. art. 6, § 15, as amended, A.R.S., provides:

"The superior court shall have *exclusive* original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. * * * The powers of the judges to control such children shall be as provided by law." (Emphasis added)

1. On September 22, 1967, an amended order was entered by the juvenile court which corrected the designation of the superior court cause number to No. 74715.

A.R.S. § 8–202 states:

"A. The superior court shall have *exclusive* original jurisdiction in all proceedings and matters affecting neglected, dependent, incorrigible or delinquent children, or children accused of crime under the age of eighteen years, and *when exercising that jurisdiction shall be known as the juvenile court.*" (Emphasis added)

The Supreme Court of Arizona, in the case of Charboneau v. Superior Court of Maricopa County, 101 Ariz. 586, 422 P.2d 702 (1967), in holding that the superior court in a guardianship proceeding had no jurisdiction to adjudicate as between father and mother as to the custody of a child alleged by the father to have been neglected by the mother, stated:

"The Arizona constitution, Article 6, § 15 A.R.S., confers exclusive original jurisdiction in the Superior Court of all dependent, and neglected children, and states that the powers of judges to control such children shall be as provided by law. A.R.S. § 8–202, which is a part of the juvenile code enacted to implement the constitutional provision regarding proceedings affecting 'neglected, dependent, * * * children,' indicates that in the exercise of this jurisdiction it is the juvenile court which acts. The definitions found in A.R.S. § 8–201 describing the meaning of 'neglected child' are broad enough to encompass children whose very existence is allegedly threateneed by the acts of one of the parents. The juvenile court, under the circumstances of this case, was the proper court jurisdiction." 101 Ariz. at 588, 422 P.2d at 704.

The juvenile court judge is authorized to make such order for the commitment, custody and care of the child as the child's welfare and the interests of the state require. A.R.S. § 8–231. When the juvenile court has acquired jurisdiction over a child, such jurisdiction continues until the child is twenty-one years of age unless sooner discharged by the court. A.R.S. § 8–236; Ginn v. Superior Court In and For Pima County, 3 Ariz.App. 240, 413 P.2d 571 (1966).

There is ample authority that when a juvenile court has been established with "exclusive" jurisdiction courts of plenary jurisdiction may not interfere with the custodial orders of the juvenile court and that the jurisdiction of the plenary court, in a divorce or habeas corpus action, is subordinate to the jurisdiction of the juvenile court insofar as the determination of custody is concerned, i. e.: Marr v. Superior Court In and For Siskiyou County, 114 Cal.App.2d 527, 250 P.2d 739 (1952); Children's Home of Marion County v. Fetter, 90 Ohio St. 110, 106 N.E. 761 (1941); and see Annots., 11 A.L.R. 147, 78 A.L.R. 317.

However, we find less than unanimity as to whether the court of general jurisdiction may proceed with a hearing to determine custodial matters, when there is a pending juvenile proceeding. There is the view that the two "courts"[2] have concurrent jurisdiction and that both may proceed with hearings simultaneously. Under this view, the actual implementation of any orders rendered in the plenary action are "suspended" until the juvenile proceeding is terminated, at which time the adjudication made in the plenary action would come to life and be effectuated. Decisions which appear to take this view are: People ex rel. Lucke v. County Court of Adams County, 109 Colo. 447, 126 P.2d 334 (1942); Ross v. Ross, 89 Colo. 536, 5 P.2d 246, 78 A.L.R. 313 (1931); Matter of the Application of Short, 74 Nev. 250, 328 P.2d 299 (1958); Children's Home of Marion County v. Fetter, supra; Marmino v. Marmino, 34 Tenn.App. 352, 238 S.W.2d 105 (1950).

2. That we are discussing, in Arizona at least, two different procedures rather than two different courts is made clear by the constitutional provision: "The superior courts provided for in this article shall constitute a single court * * *." Ariz.Const. art. 6, § 13.

Another court has taken the view that through "comity," the divorce court should yield to the juvenile court. State ex rel. Rickli v. County Court for Dane County, 21 Wis.2d 89, 123 N.W.2d 908 (1963).

California decisions, while holding that the court of general jurisdiction ·cannot interfere with the custodial orders of the juvenile court, have avoided a holding that the plenary court loses all jurisdiction so long as the juvenile proceeding is pending. In re People on Behalf of Syson, 184 Cal. App.2d 111, 7 Cal.Rptr. 298 (1960); Marr v. Superior Court In and For Siskiyou County, 114 Cal.App.2d 527, 250 P.2d 739 (1952). The Colorado Supreme Court, in permitting simultaneous proceedings in both plenary and juvenile court, so long as the former does not interfere with the immediate custodial orders of the latter, has taken the view that the two proceedings are basically different because between "different parties." People ex rel. Lucke v. County Court of Adams County, 109 Colo. 447, 126 P.2d 334, 337 (1942); Ross v. Ross, 89 Colo. 536, 5 P.2d 246, 248, 78 A.L.R. 313 (1931). The analogy taken in *Lucke* to the difference between a " * * * larceny case and a replevin case" (126 P.2d at 337) would raise the question whether in Colorado an adjudication of the juvenile court would be a binding judgment as between parents contesting for custody in that court. See 50 C.J.S. Judgments § 754b at pp. 269–273.

A more transcendent approach has been taken by at least one other court, which speaks of the "extinguishment" of the jurisdiction of the divorce court, In re Hosford, 107 Kan. 115, 190 P. 765, 767, 11 A.L.R. 142 (1920), by the taking of jurisdiction by the juvenile court. A later Kansas decision has stated:

> "It follows that the juvenile court in this case could acquire jurisdiction of the minor child and thereby *oust* the then existing jurisdiction of the district court in the divorce action." (Emphasis added) Trent v. Bellamy, 164 Kan. 438, 190 P.2d 400, 403 (1948).

We believe in Arizona that when the juvenile court rightfully assumes jurisdiction over a child, such jurisdiction is sufficiently "exclusive" so that hearings and orders as to the custody of that child in other judicial proceedings are unauthorized. Our constitutional language is emphatic. We regard the *Charboneau* decision to be persuasive, if not controlling, in reaching this conclusion. This result brings with it the practical benefit that child and parent will less often be subjected to simultaneous litigation in two different courtrooms.

Nor do we see any essential weakness in an adjudication as to custody made in a juvenile court. It is our view that if the interested parties have been given proper notice of such proceedings, or if they have appeared therein and been given opportunity to present their contentions, the adjudication rendered in the juvenile court is as binding upon such parties as any determination by a court of competent jurisdiction. State ex rel. Jones v. West, 139 Tenn. 522, 201 S.W. 743 (1918).

We appreciate that at the time of termination of juvenile court jurisdiction, there may be a procedural problem presented if the terminal order of the juvenile court pertaining to the custody of the child does not coincide with the existing order in the divorce action. Though we must perforce await the presentation of a case specifically presenting this problem to provide any authoritative solution, we take this opportunity to call attention to the fact that the Washington Supreme Court has recommended that, for the purpose of adopting an appropriate permanent custody order for the child, the superior court judge should sit both as a juvenile court judge and as the judge presiding in the divorce action, so that a permanent custody order may be entered which can be appropriately effectuated after the juvenile court file is closed. See In re Walker, 43 Wash.2d 710, 263 P.2d 956, 961 (1953). We appreciate that in suggesting this approach, we are raising practical considerations over a theoretical one, but we are of the view

that the benefit to those involved in such litigation justifies whatever departure from theory there may be in permitting one judge to wear the hats of these two "courts" at the same time.

We hold that the ex parte custodial orders rendered in the divorce action and the hearings conducted, and proposed to be conducted, in that action to determine custodial matters affecting M——— are, and would be, so long as the juvenile proceeding remains open, beyond the jurisdiction of the superior court.

The petition for relief is granted and a peremptory writ of prohibition shall issue forthwith.

HATHAWAY, C. J., and KRUCKER, J., concur.