569 P.2d 244

**Susan E. EVANS, Appellant,**

**v.**

**James E. EVANS, Appellee.**

**No. 2 CA–CIV 2258.**

Court of Appeals of Arizona,
Division 2.

April 27, 1977.

Rehearing Denied June 30, 1977.

Review Denied Sept. 13, 1977.

Michael J. Vingelli, Tucson, for appellant.

Leighton H. Rockafellow and Alex A. Gaynes, Tucson, for appellee.

OPINION

HATHAWAY, Judge.

A superior court order modifying the child custody provisions of a dissolution decree is the subject of this appeal. Appellant is the natural mother of the minor child and was awarded custody of the child in the dissolution decree filed February 11, 1975. The order from which this appeal is taken changed custody from appellant to appellee, the child's natural father, with reasonable visitation privileges to appellant.

An outline of the procedural chronology of events is necessary for an understanding of the issues. On September 8, 1975, a petition was filed in Pima County Juvenile Court by the paternal grandparents of the minor child. It alleged that the child, residing with the petitioners, was three years old, that the father resided in Las Vegas, Nevada, that the mother was in Minot, North Dakota, that the child had been with petitioners since about August, 12, 1975, that the mother had telephoned petitioners on two occasions but had not indicated when she would return to Arizona, and that the child was a dependent child within the purview of A.R.S. § 8–201 in that there was no parent to exercise proper and effective parental care and control. It further alleged that during the period of time that he was in the custody of his mother, the child was not properly provided with the necessities of life, was abused and neglected by his mother, and that the care she did provide him was such that the child's health, morals and emotional well-being were endangered.

A hearing on the petition was commenced on October 3, 1975, with the petitioners and natural parents present and represented by counsel. Appointed counsel for the minor child was also present. The hearing continued on October 6, and at the conclusion thereof, the child was adjudicated a dependent minor child and the paternal grandparents were appointed co-guardians. The minute entry order recites:

"Court would like to see the child with one of its natural parents soon as possible. Court feels it would be fair to see if the mother and her new husband's marriage succeeds. The father testified he is not able to take the child and went back to Las Vegas; and because of the testimony he heard, Mrs. Grey [sic] has not been able to be an effective parent. Court finds further that the child was a dependent child when the petition was filed and there is no change of circumstances since the petition was filed. The mother is willing and should have a chance to see if she is able to make her marriage go, but, it is only fair in this circumstance to let the child stay where he is until the mother gets her problems worked out and her home is evaluated by the appropriate authorities in North Dakota.

Court will accept the recommendation of Norman Spindler and further find after considering the evidence that A.R.S. § 8–241 also applies and that said minor is a dependent minor child; and

\* \* \* \* \* \*

IT IS FURTHER ORDERED that a review of this matter be held not to exceed six (6) months or sooner if counsel feel that one should be held earlier.

THAT Mr. Spindler will cause the appropriate agency in North Dakota to look into the home situation of the natural mother and soon as an evaluation of the natural mother's home is made and the report of those authorities indicate that the mother's home situation is suitable for the child, the Court could then make further determination of this case and place the child without further necessity of the mother and Mr. Guy [sic] coming back for the hearing."

No appeal was taken from the dependency adjudication and therefore it is conclusive. A review hearing was subsequently held on February 17, 18 and 19, 1976. Over appellant's objection, the court on its own motion ordered consolidation of the juvenile cause and cause number D–4057, the divorce case. On February 19, after all the

evidence relative to dependency was completed, the child's father filed a petition for modification of the decree as to child custody. Copies of the petition, which had been filed in open court, were furnished to appellant's counsel and the attorney representing the minor child. Extensive arguments were presented to the court and the position of both appellant's attorney and the child's attorney was that the court could rule only on the question of dependency and could not summarily dispose of the modification issue based on evidence presented at the dependency review hearing. At the conclusion of the hearing, the court ordered:

"IT IS THE FINDING OF THE COURT that neither party at this time is ready, able and willing to take care of said child without assistance of the Court, therefore,

IT IS ORDERED that the care, custody and control of said minor be placed with the natural mother, Susan Evans Gray, with Dennis Gray, with the request the Juvenile Court in Minot, North Dakota, exercise courtesy supervision in this matter and that Mr. Blore render a written report to this Court within sixty (60) days from this date as to what progress he finds.

IT IS FURTHER ORDERED that any of the parties may request a review hearing at the end of the sixty (60) days, but in any event that a review hearing be held in this matter not later than one (1) year from this date."

Appellee's attorney thereupon moved for a stay order which was granted and the court directed that the custody and control of the minor child remain with the paternal grandparents. The court further ordered that pending any matter that might be filed, the juvenile case and the divorce case would remain consolidated.

A motion for reconsideration was filed on March 3, 1976, by the grandparents requesting in the alternative that: (1) the dependency continue with the care, custody and control of the child remaining in the grandparents; or (2) the dependency petition be dismissed, a hearing be set on appellee's petition for modification and that a temporary order keeping the child with the grandparents be issued until disposition of the petition for modification; or (3) the dependency action be dismissed and the petition for modification of custody be granted, based upon the evidence adduced at the initial dependency hearing and at the subsequent review hearing. The motion was vigorously opposed by appellant and counsel urged the court to sever the cases and vacate the stay order.

On April 21, 1976, a hearing was held on the motion to reconsider[1] at which time appellee's attorney advised the court that appellee had been reassigned to the State of Arizona, that he was reporting for duty at Luke Air Force Base and had obtained a two-bedroom apartment in Glendale, Arizona, and was ready, willing and able to take care of the child with the assistance of his parents. He argued that the change in circumstances warranted modification of custody, and that the court had certainly heard more than enough evidence: He stated:

"If we were to have another hearing on the modification, I don't think we would hear testimony any different than what the Court has already heard on two previous occasions."

Counsel did suggest that if the court was not satisfied with his representation, the stay order should remain in effect and the motion for modification be set for hearing. Appellant's attorney vigorously opposed the requested modification, pointing out to the court that the purpose of the February review hearing was to see whether the dependency adjudication should continue and that appellant had returned from North Dakota to Arizona in February to prove to the court that she was then able to re-assume custody of the child, her right to

1. Appended to the motion to reconsider were various affidavits executed by members of the Evans family concerning matters occurring after the February 19 hearing; also the father's affidavit reciting that he had been reassigned to Luke Air Force Base in Phoenix, Arizona, and that he was ready, willing and able to provide for the care, custody and control of his son.

custody having been established by the dissolution decree.

The court granted the motion to reconsider, finding that the child was not a dependent child as of that time. It further found that the father was ready, willing and able to regain custody of his child and did not need court assistance or supervision; and that the mother was not ready, able and willing to resume custody of her child without continued assistance of the court on a courtesy supervisory basis with the juvenile court of Minot, North Dakota, thus the child would be a dependent child if he was released to her.[2] The court was of the opinion that it would be "in the best interest of the child and the least detrimental alternative" to place the child in the father's custody without supervision of the court as a dependency case but nevertheless subject to the continuing jurisdiction of the divorce court.

The court ordered that the dependency petition be dismissed and that the dissolution decree be modified, awarding custody of the child to the father, subject to reasonable visitation rights in the mother. It also ordered that the home and assistance of the paternal grandparents could be utilized while the father had the care, custody and control of the child.

In *McClendon v. Superior Court,* 6 Ariz. App. 497, 433 P.2d 989 (1967), we held that when the juvenile court rightfully assumed jurisdiction over the child, such jurisdiction is exclusive and the continuing jurisdiction of the divorce court cannot be invoked to determine custodial matters affecting the child. However, we stated:

"We appreciate that at the time of termination of juvenile court jurisdiction, there may be a procedural problem presented if the terminal order of the juvenile court pertaining to the custody of the child does not coincide with the existing order

in the divorce action. Though we must perforce await the presentation of a case specifically presenting this problem to provide any authoritative solution, we take this opportunity to call attention to the fact that the Washington Supreme Court has recommended that, for the purpose of adopting an appropriate permanent custody order for the child, the superior court judge should sit both as a juvenile court judge and as the judge presiding in the divorce action, so that a permanent custody order may be entered which can be appropriately effectuated after the juvenile court file is closed. See *In re Walker,* 43 Wash.2d 710, 263 P.2d 956, 961 (1953). We appreciate that in suggesting this approach, we are raising practical considerations over a theoretical one, but we are of the view that the benefit to those involved in such litigation justifies whatever departure from theory there may be in permitting one judge to wear the hats of these two 'courts' at the same time." 6 Ariz.App. at 500–1, 433 P.2d at 992–993.

In *Walker,* cited by us in *McClendon,* supra, the Washington Supreme Court saw no objection to an application for determination of permanent custody being made simultaneously with the petition that might be made in the future by either parent, respecting termination of the dependency status by the juvenile court. The court stated:

"In fact, both determinations might better be made by the same judge, assuming both matters are presented properly and simultaneously. The merit in this lies in the fact that it could avoid unnecessary litigation and further delay, and result in a saving of court costs and attorney's fees as to both parents." 263 P.2d at 962.

Although there is a factual difference between *Walker* and the case at bench in that

---

2. The record discloses that after the court granted the motion to reconsider on April 21, a letter from the North Dakota juvenile authorities, dated April 19, was received by the Pima County juvenile judge on April 22. The letter stated that it was an "update on progress" found in the home of Mr. and Mrs. Gray. It

indicated that their home was nicely furnished and that "they appear well able to provide for [child] both financially and a stable home environment." It also stated that Mrs. Gray was no longer working as the Grays were expecting a baby in the early fall.

here custody had previously been determined by the divorce court and awarded to the natural mother, we do not conceive that such difference prohibits a superior court judge from sitting both as a juvenile court judge and as a judge presiding in the divorce action.

The record reflects that the juvenile court was most concerned with eliminating instability from the entire situation and therefore apparently implemented the suggestion postulated by this court in *McClendon,* supra. In so doing, however, we do not believe the matters were presented properly, a prerequisite indicated by *Walker,* supra.

■ The question to be resolved in a dependency hearing is not the comparative rights of parents to custody, but solely whether the child is neglected or dependent. *People in Interest of W. C.,* 35 Colo.App. 416, 533 P.2d 501 (1975). This was the only issue before the court at the February 1976 review hearing as to which appellant was required to present any evidence. If she proved to the satisfaction of the juvenile court that she was capable of exercising effective parental care and control, the child's dependency status would have been at an end and by virtue of her right to custody under the dissolution decree, the child would have been returned to her custody.

What then was the situation at the conclusion of the February hearing? The evidence showed that the natural father was stationed in Nevada and his circumstances were such that he was not capable of exercising effective, parental control of the child. The court expressly found that he was not since it declined to terminate the dependency. The mother, on the other hand, had presented proof as to her home environment and marital situation concerning which the court indicated it needed information before it would allow the child to be returned to her. Apparently the court was not completely satisfied as to the mother's ability to care for the child but felt that before custody could be restored to her, per the dissolution decree, she should

have an opportunity to prove that she could be an effective parent. We believe the evidence presented at the February review hearing supported this disposition since the court had indicated at the original dependency hearing that it would like to see the child with one of its parents "as soon as possible."

As noted above, this order was stayed pursuant to a request by the paternal grandparents (petitioners in the dependency proceeding). They then filed their motion for reconsideration arguing that "the court should not play Russian Roulette with the child's physical and emotional well-being and try a temporary placement with the mother when the court is not satisfied as to her rehabilitation." They also pointed to an appended exhibit (a letter from the Air Force indicating that receipt of proper documentation would promote the father's reassignment to Luke Air Force Base), which would allay the court's concern about the possibility of the father achieving transfer to Arizona.

We are of the opinion that the court erred in granting the petition to modify custody at this juncture of the proceedings. The father was allowed to establish that he had remedied the one circumstance of his disability to assume the care and custody of the child. It would thus appear that removal of this disability, coupled with the fact that the paternal grandparents were able to assist him, prompted the court to change its mind so that a stable environment for the child could be achieved as expeditiously as possible. The mother was not afforded an opportunity to question the father's fitness nor did the court have the report concerning her home situation. Under these circumstances, the court was not in a position to judge the relative fitness of the parties to have custody.

■ Determination of which parent should have custody, either originally or upon modification, rests upon what is in the best interests of the child. A.R.S. § 25–332(A); *Georgia v. Georgia,* 27 Ariz.App. 271, 553 P.2d 1256 (1976). Since the minor child was the person most concerned with

the outcome of the custody determination, it was necessary that the parties have time to prepare and present *all* relevant evidence to the court. *Solomon v. Solomon*, 5 Ariz. App. 352, 427 P.2d 156 (1967). Therefore, modification of custody without affording both parents an opportunity to present evidence on the custody question was error. There is no hard-and-fast rule as to what will best serve the welfare and interests of a child and all the circumstances which may affect that determination must be considered. Although as an appellate court we defer to the trial court's assessment in custody questions, absent an abuse of discretion, we believe in the case at bench the custody determination was premature.

We therefore vacate the order modifying custody and remand the cause for further proceedings not inconsistent with this opinion.

HOWARD, C. J., and RICHMOND, J., concur.