*In re* MARRIAGE OF RICHARD JOSEPH MANLEY, Petitioner-Appellant, and CHERYL FRANCES MANLEY, Respondent-Appellee.

First District (2nd Division)   Nos. 78-2151, 79-838 cons.

Opinion filed April 29, 1980.

634

William A. Vlasek, of Lansing, for appellant.

No appearance for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Petitioner, Richard Manley, appeals from a judgment of the circuit court of Cook County which denied his request to grant him custody of his two children previously given to respondent, Cheryl Manley, after dissolution of their marriage. Basically, petitioner on appeal questions the evidentiary sufficiency for the judgment and whether certain procedures of the trial court were improper. Respondent has not filed a brief, but we shall consider the merits of petitioner's contentions. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The parties were divorced in 1974 in Springfield, Illinois; respondent was granted custody of their two children, Kimberly, then age 2, and Jason, age 5. The divorce may have been influenced by petitioner's desire to enter into "wife-swapping" arrangements. Respondent resided in the former marital home for a brief time before taking the children out of State. Petitioner then purchased the home and moved in with his girl friend, Janet Jaekel, whom he married in February 1977, shortly before commencing this action. Petitioner and his present wife now reside in a house in Joliet, Illinois.

The record reflects that for several years after the divorce occurred respondent moved to various locations, eventually settling in a Chicago apartment. She explained that her prior moves were principally

motivated by her desire to gain better employment and that she was a nurse at a Chicago hospital.

Evidence was also introduced showing that respondent had allowed petitioner to keep the children for periods of time between 1974 to 1977. The reason for this was to some extent occasioned by her tumultuous relationship with Charles Ray Morgan, with whom she lived for a time after her divorce. At the time of the hearing on the change of custody, respondent had discontinued the extent of her prior relationship with Morgan. The record also shows that at one time Morgan pushed respondent causing her to fall on Kimberly. The latter suffered a bloody nose as result of the incident.

At the hearing on petitioner's action for modification of custody, petitioner and his present wife testified concerning how the children were, in their opinion, adversely affected by respondent's environment and about respondent's prior questionable behavior. Respondent explained that presently the children had their own bedrooms in an apartment she rented. It was stipulated that each child was also progressing well in school.

Two psychiatrists testified at the hearing. Dr. Robert Bussell, the director of clinical services for the juvenile court of Cook County, spoke to each child, petitioner and his present wife, and respondent. This physician indicated that Kimberly was normal but Jason seemed hostile because of what his parents had done to him. Dr. Bussell recommended that petitioner be granted custody because he and his present wife could provide a more stable environment.

Conversely, Dr. John Adams, who examined the parties herein as well as Jason, recommended that custody remain with respondent. He explained that the several moves to different residences by respondent and the children were less than ideal, but there was no evidence of any traumatic effect on the children resulting therefrom. Further, he described Jason's actions of chewing his shirt collars and bedwetting to be transient situations which can occur because of anxiety when the family breaks up. Dr. Adams indicated that Jason was of average or above-average intelligence. He did not examine Kimberly because it was agreed that she was progressing properly.

The trial judge spoke to each child in chambers, and he then described his reaction to these interviews. The trial judge indicated that Kimberly was bright though somewhat nervous. Jason was shy and quiet; he was also nervous and noncommittal. Thereafter in rendering the decision the trial judge found that both parties were fit to have the care and custody of the children. The court noted that, while the parental conflict and bitterness had adversely affected the children, the least detrimental alternative was to have respondent retain custody. Further,

the trial judge's order noted that petitioner had not sustained his burden of proof to allow a change in custody.

## I.

On March 12, 1980, this court entered an order directing the trial court to conduct proceedings and to advise us of the current status of the children, whose best interests are of paramount importance in this proceeding. Our order was occasioned by the fact that nearly three years had elapsed since the trial court rendered its decision; this delay appears to have been principally related to petitioner's failure to proceed expeditiously with his appeal.[1] We do not think child-custody cases should be decided on such a stale record.

The trial court complied with our order and submitted a report on April 16, 1980, which is hereinafter detailed. Both parents have complied with visitation orders of the court and showed love and concern for the children. The trial court also found that each child was healthy, well dressed and interested in school and social activities. Copies of the children's report cards from their private, religious-affiliated school appear to show a normal progression in scholastic development. In the report the trial court observed that Jason is shy and well mannered; his sister is described as a well-mannered, aggressive child who is well adjusted.

At this time respondent resides in the same apartment where she lived when the original proceedings commenced. She is engaged to be remarried later this year.

Petitioner currently lives in a new home with his wife Janet in Joliet. He is a college instructor.

## II.

The present Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) authorizes the modification of child custody under certain circumstances. Section 610 (Ill. Rev. Stat. 1977, ch. 40, par. 610) provides in relevant part:

"(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying

---

[1] This lengthy delay was in part caused by the fact that some nine months elapsed between the last hearing in the trial court and the submission of a proposed order to the trial court. The notice of appeal was filed September 12, 1978, and appellant's brief was filed October 9, 1979.

these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

 (1) the custodian agrees to the modification;

 (2) the child has been integrated into the family of the petitioner with consent of the custodian; or

 (3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

From the record presented it is apparent that subsections (b)(1) and (b)(2) are not applicable.

■■ Thus consideration must be given to whether the children's best interests required the custody change under subsection (b)(3). In making this determination we are required to consider that petitioner has the burden to show a material change in circumstances since respondent obtained custody to justify a custody modification, and the trial court's determination in this regard will not be set aside unless there has been an abuse of discretion or the decision was contrary to the manifest weight of the evidence. *In re Custody of LaMarca* (1979), 78 Ill. App. 3d 26, 29, 397 N.E.2d 31; *In re Marriage of Poston* (1979), 77 Ill. App. 3d 689, 692, 396 N.E.2d 576.

■ Judged by these standards we cannot say the trial court erred in its decision. The record reflects the tension between the parties concerned. This was likely to affect the children. It is obvious that Kimberly had adjusted to the situation while there was some adverse effect on Jason, although the latter's condition was not thought to be serious by Dr. Adams. Finally, the medical experts were of differing opinion on the question of custody. When viewed in its totality, the record does not show the trial court's decision was an abuse of discretion or was contrary to the manifest weight of the evidence. Further, the current status report heretofore noted is supportive of the trial court's judgment.

### III.

■ Petitioner also questions the procedure of the trial court. He claims that the trial court should have immediately conducted a hearing on his petition for a temporary change of custody. Petitioner asserts that his counsel's voluntary withdrawal of that petition is not controlling. Petitioner's argument seems premised on the conclusion that the facts which could have been presented at that time would have been compelling for a change in custody, and that the lapse of several months before the custody hearing began for change in permanent custody detracted from the prior factual setting. Petitioner's position is without basis since, as noted, his counsel withdrew the request for a temporary

change in custody. Further, the best interests of the children are of paramount importance and cannot be limited to a transitory factual setting but must be viewed in their entirety.

## IV.

Petitioner also argues that, while not reflected in the record, the trial court conducted several conferences with the parties out of the presence of their attorneys, apparently to settle the matter. Petitioner now maintains that he believes information gathered at those hearings, which is *de hors* the record, possibly influenced the ultimate decision of this case. However, there is no basis in the record to support this conclusion. Several court hearings were conducted on the custody petition, various witnesses testified and argument of counsel conducted. There is no basis in the record to even inferentially support petitioner's conclusion. Additionally, petitioner does not even claim that he objected to any such procedure in the trial court. We therefore reject petitioner's position.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.