In re the MARRIAGE OF Kim M. MARTIN, Appellee,

and

Robert D. Martin, Appellant.

No. 00CA0056.

Colorado Court of Appeals, Div. I.

Jan. 3, 2002.

Cox, Mustain–Wood, Walker and Schumacher, Timothy B. Walker, Littleton, CO, for Appellee.

Patricia Jo Stone, P.C., Patricia Jo Stone, Parker, CO, for Appellant.

Opinion by Judge TAUBMAN.

In this post-dissolution of marriage proceeding, Robert D. Martin (father) appeals the orders limiting the conditions of his parenting time and calculating child support payable to Kim M. Martin (mother) based on his imputed income. We vacate the orders and remand for further proceedings.

In the June 1997 permanent orders, the parties were awarded joint custody of their two daughters, with mother as the primary residential custodian. Father was ordered to pay monthly child support in the amount of $721.66, which was based on his gross monthly income of $3,958 and on the children spending no overnights with him.

Father married his current wife four months later. After that, there were a series of problems among mother, the current wife, and the children.

For several months in 1998, the children spent equal time with each parent, and father paid various amounts of child support as his income fluctuated because of layoffs and temporary employment.

The trial court subsequently terminated father's parenting time after he disobeyed a court order. The animosity among the parties and the current wife escalated when the current wife struck mother in the presence of a sheriff's deputy, who had accompanied mother to father's residence to retrieve the children pursuant to the court's order.

The trial court entered an interim order in March 1999 reinstating limited parenting time for father until a custody evaluation could be conducted and a full hearing held. The court specifically found that the children were subject to "anger and disruption" and that the current wife was a "destructive influence" and an "irritant" who "precipitated problems." The court ordered father to "protect" the children from the current wife's "negative influences" and indicated that father was, in effect, "on probation" until the court held the next hearing.

At the November 1999 hearing, the custody evaluator recommended that mother be awarded sole custody and that father have parenting time which limited or eliminated the children's contact with the current wife. After this testimony was taken, father indicated that he did not wish to contest parenting time. Accordingly, the parenting coordinator was not asked to testify as to this issue.

The court granted mother sole custody of the children and granted father parenting time. In the order, the court adopted all the custody evaluator's recommendations except that part stating the current wife should not be left alone with the children. Instead, father was ordered to keep the children at least 100 yards from the current wife at all times. The court stated that the custody evaluator's recommendations were inappropriate in part because "they seem to reflect the eternal optimism of psychotherapists that people will be able to turn themselves around emotionally." The court noted that although it had "had enough" of this case, it still needed to protect the children.

The court recognized that the 100-yard restriction on parenting time "is a tragedy," which would make holidays "extremely difficult," but nonetheless imposed it because "even the slightest exposure of the children to [the current wife] will be ... very significantly harmful to them emotionally." The court found that father had not been able to control the current wife's behavior and that her "lack of impulse control is ... emotionally damaging to these girls." Further, the court found that mother had "depleted her emotional resources" to "repair the damage," which made these resources unavailable to the children. The court found this too was "extraordinarily harmful" to the children.

As to child support, the court imputed a gross monthly income of $4,000 to father, after finding he earned only $2,566 per month in his new job as a teacher. Based on the child support guidelines, the court ordered father to pay child support in the amount of $1275.51 per month. Arrearages were calculated at $8800.21, payable monthly over twelve months in the amount of $733.35.

## I. Parenting Time

Father contends that the trial court abused its discretion in restricting his parenting time by requiring that his current wife remain at least 100 yards away from the children at all times. We agree.

Section 14–10–123.4, C.R.S.2001 provides: "The [G]eneral [A]ssembly hereby declares that children have certain rights in the determination of matters relating to parental responsibilities, including the right to have such determinations based upon the best interests of the child."

In determining the best interests of the child, the court must consider the factors enumerated in § 14–10–124(1.5), C.R.S.2001, including the interaction between the child and any other person who may significantly affect the child's best interests. *See generally In re Marriage of Lester*, 791 P.2d 1244 (Colo.App.1990). The court must also consider all other relevant factors. Section 14–10–124(1.5)(a), C.R.S., 2001.

In addition, reasonable parenting time is mandated, and undue restrictions on parenting time are prohibited, unless the court finds that the exercise of parenting time rights would endanger the child's physical health or significantly impair the child's emotional development. Section 14–10–129(1), (2), C.R.S.2001; *G.A. v. C.V.*, 976 P.2d 881 (Colo.App.1999).

■ A trial court need not make specific findings on each and every factor listed in the statute, but there must be some indication in the record that the trial court considered factors that were pertinent. *In re Marriage of Garst*, 955 P.2d 1056 (Colo.App. 1998).

In many stepfamilies, the stepparent assumes the role of the psychological parent. *See* Bryce Levine, Note, *Divorce and the Modern Family: Providing in Loco Parentis Stepparents Standing to Sue for Custody of Their Stepchildren in a Dissolution Proceeding*, 25 Hofstra L. Rev. 315 (1996). The psychological parent is someone other than a biological parent who develops a parent-child relationship with a child through day-to-day interaction, companionship, and caring for

the child. Indeed, once this bond forms, many psychologists believe that breaking up the relationship would be harmful to a child's emotional development. Joseph Goldstein et al., *The Best Interests of the Child: The Least Detrimental Alternative* 11–13, 104, 105 (1996).

Colorado courts have recognized the concept of psychological parenting and its relationship to the best interests of the child. *See In re Custody of C.C.R.S.*, 892 P.2d 246 (Colo.1995)(evidence supported determination that it was in the best interests of the child to stay with the psychological parents); *In re V.R.P.F.*, 939 P.2d 512 (Colo.App.1997)(noting legislative recognition of the importance of "psychological parenting" to the best interests of a child). *See also In re Paternity of Cheryl*, 434 Mass. 23, 746 N.E.2d 488, 495 n. 15 (2001)(children benefit psychologically, socially, and educationally from stable and predictable parental relationships, including those with a stepparent). In fact, a societal interest exists in the marital family, including families with stepparents. *See* § 14–10–124; *see generally* Eric G. Andersen, *Children, Parents, and Nonparents: Protected Interests and Legal Standards*, 1998 BYU L. Rev. 935 (1998). Accordingly, when family integrity is broken or weakened by state intrusion, a child's needs are often thwarted and his or her development detrimentally impacted. *In re G.C.*, 50 S.W.3d 408, 415 (Mo.Ct.App.2001)(Teitelman, J., concurring).

This concept of the psychological parent is based on the state's interest in marriage and in maintaining the importance of the family. *See In re Marriage of Newman*, 653 P.2d 728 (Colo.1982)(marriage is favored over less formalized relationships that exist without the benefit of marriage).

In considering the best interests of the child, some courts have concluded that child placement decisions must provide the least detrimental alternative to ensure a child's development. *See, e.g., Adoption of Michelle T.*, 44 Cal.App.3d 699, 117 Cal.Rptr. 856 (1975); *In re Aaron Z.*, 81 Wis.2d 194, 260 N.W.2d 246 (1977). The least detrimental alternative analysis is predicated on the notion that although some detriment to a child is present in every child placement decision, a court's task is to make the placement choice "least detrimental" to the child. Goldstein, *supra*, at 50–51.

Although no reported Colorado appellate opinion has addressed whether and how a court should consider the least detrimental alternative when determining the best interests of the child, the supreme court has stated that the foremost priority in resolving parenting time disputes is to minimize the detriment to the child. *In re Custody of C.C.R.S, supra; see also In re Marriage of Chester*, 907 P.2d 726 (Colo.App.1995)(trial court's determination that children were capable of adjusting to an out-of-state move without suffering any serious detriment was within its broad discretion).

In addition, other states that, like Colorado, have adopted the Uniform Dissolution of Marriage Act (UDMA) have recognized the concept of the least detrimental alternative for safeguarding a child's growth and development when applying the "best interests of the child" test. *See Evans v. Evans*, 116 Ariz. 302, 569 P.2d 244, 247 (Ct.App.1977)(remanding for further proceedings on other grounds but noting that it would be "in the best interest of the child and the least detrimental alternative" to place the child in the father's custody without supervision of the court in a dependency case subject to the continuing jurisdiction of the divorce court); *In re Marriage of Manley*, 83 Ill.App.3d 633, 39 Ill.Dec. 319, 404 N.E.2d 910 (1980)(trial court noted that, while the parental conflict and bitterness had adversely affected the children, the least detrimental alternative was to have respondent retain custody).

We conclude, based upon the above cases, that the concept of least detrimental alternative is subsumed within the concept of best interests of the child set forth in § 14–10–124(1.5).

Section 14–10–124(1.5)(a) provides, in pertinent part, that when making provisions for parenting time that are in a child's best interests the court "shall" consider, among other factors:

(I) The wishes of the child's parents as to parenting time;

. . .

(III) The interaction and interrelationship of the child with his or her parents, his or her siblings, and any other person who may significantly affect the child's best interests;

. . .

(VI) The ability of the parties to encourage the sharing of love, affection, and contact between the child and the other party;

. . .

(VIII) The physical proximity of the parties to each other as this relates to the practical considerations of parenting time.

These factors indicate that when a trial court is determining appropriate parenting time, it must balance a host of relevant factors, recognizing that any alternative it chooses may carry with it both advantages and disadvantages. Additionally, a trial court must exercise its discretion in determining parenting time consistently with the express public policy of encouraging contact and frequent visitation between each parent and the children. *In re Marriage of Lester*, *supra*.

■ Here, in imposing the 100 yard restriction, the trial court created a dilemma for father in that he must choose between spending time with his current wife or his children. To exercise his biweekly parenting time, father must ask his current wife to leave their home or he must make arrangements to stay away from his home, with the children, for the weekend. In the alternative, he would be forced to forgo his parenting time.

Although the trial court appropriately made findings regarding the positive relationship among mother, mother's fiance, and the children, it did not make a similar analysis with regard to the relationship among father, his current wife, and his children. It recognized that the 100–yard restriction would make it difficult for father to spend holidays with his current wife and the children, but it did not sufficiently consider that the children had begun to form a relationship with the current wife. For example, the current wife gardened with the children, gave them piano lessons, and took them to church activities. We agree with father that the trial court's 100–yard restriction effectively "precludes the children from attending church or church activities with [him], as well as participating in his family events," such as the children's grandparents' fiftieth wedding anniversary celebration.

We also recognize that a court may, in its discretion, adopt a parenting plan that differs from the recommendations of a child custody evaluator. *See Aylor v. Aylor*, 173 Colo. 294, 478 P.2d 302 (1970)(trial court makes custody decisions, and welfare personnel reports constitute nothing more than recommendations).

In addition, we recognize that a trial court may, in limited circumstances, exercise its discretion to preclude contact between a child and another person who may detrimentally affect the child's best interests. *See Ex parte D.W.W.*, 717 So.2d 793 (Ala.1998)(affirming restricted visitation that prevented contact with mother's live-in partner, where partner threatened to deprive child of visitation with her father as a form of punishment); *S. v. S.*, 435 A.2d 721 (Del.1981)(remanded for court to reconsider whether contact with father's paramour should be restricted; court could consider whether this adulterous relationship significantly impaired child's emotional development); *K.R. v. B.M.H.*, 982 P.2d 521 (Okla.1999)(affirming restriction on grandparents' visitation that excluded contact with child's uncle, who had harmed the child).

Here, the trial court determined that significant exposure to the current wife would be emotionally harmful to ·the children and, therefore, imposed the 100–yard restriction. However, the inquiry under § 14–10–124(1.5)(a) focuses on whether the exercise of the parenting time by the *party*, not the stepparent, would endanger the child's physical health or significantly impair the child's emotional development. In addition, the court did not first consider various factors listed in § 14–10–124(1.5)(a), including the wishes of father to keep his new family intact while exercising his parenting time and how the 100–yard restriction would limit the interaction among the children, father, and the current wife.

In addition, the trial court did not consider alternatives to enable the children to have contact with father and the current wife. Nor did the trial court consider whether the 100–yard restriction was the least detrimental alternative in light of the best interests of the children.

Instead, the trial court noted its impatience with the parties and the inability of child custody evaluators to make long-term predictions. *See Crites v. Crites*, 137 Colo. 220, 322 P.2d 1045 (1958)(statement by trial court disclosing decision was based largely on irritation, and not on the evidence, indicated a failure to exercise discretion and require reversal).

Accordingly, we conclude that the trial court abused its discretion in imposing the 100–yard restriction.

## II. Child Support

Father also contends that the court erred in imputing income to him without making a specific finding of fact that he was underemployed. We agree that this issue must be reconsidered on remand.

■ Under § 14–10–115(7)(a) and (b)(I), C.R.S.2001, if a parent is voluntarily unemployed or underemployed, child support must be calculated based on a determination of potential income. *In re Marriage of Bregar*, 952 P.2d 783 (Colo.App.1997). In making that determination, a court may impute to a parent the annual income he or she previously earned. *See In re Marriage of McCord*, 910 P.2d 85 (Colo.App.1995).

However, a parent who is employed but is earning less than he or she is capable of earning may not be considered voluntarily underemployed if, inter alia, the employment is a good faith career choice that is not intended to deprive a child of support and does not unreasonably reduce the support available to a child. Section 14–10–115(7)(b)(III)(B), C.R.S.2001; *In re Marriage of Elmer*, 936 P.2d 617 (Colo.App.1997). Relevant to this inquiry is whether alternative employment is available. *See In re Marriage of Bregar, supra*.

■ Determining whether a parent is voluntarily underemployed is typically a question of fact. *In re Marriage of Zisch*, 967 P.2d 199 (Colo.App.1998). Thus, the court must make findings sufficient to support any determination of underemployment and the consequential imputation of income. *See In re Marriage of Parker*, 886 P.2d 312 (Colo. App.1994).

■ Here, the trial court made no findings as to whether father was voluntarily underemployed or whether he had undertaken a new career in good faith. Therefore, we are unable to review the propriety of the imputation of income. Accordingly, on remand, the trial court shall reconsider the issues of father's gross income, and if the court again determines that imputation of income to father is warranted, findings must be made in support. *See In re Marriage of Parker, supra*. The court may take additional evidence on remand, if, in its discretion, such evidence is deemed necessary. *See In re Marriage of Lee*, 781 P.2d 102 (Colo.App. 1989).

We note, however, that father incorrectly asserts that specific findings are necessary pursuant to § 14–10–115(3)(a), C.R.S.2001, because, in his view, the imputation of income amounts to a deviation from the presumptive amount of child support. Findings are not required based on this provision, which does not apply here, but rather are required simply to apprise the appellate court of the basis of the trial court's order. *See In re Marriage of Garst, supra*.

## III. Attorney Fees

Both parties request attorney fees, with wife making her request under §§ 13–17–101, et seq., and 14–10–119, C.R.S.2001, and father making a generic request. We deny wife's request for fees under § 13–17–101, et seq. On remand, either party may apply to the trial court under § 14–10–119 for a determination of attorney fees on appeal. *See In re Marriage of Meisner*, 715 P.2d 1273 (Colo. App.1985).

The orders are vacated. The case is remanded for reconsideration of father's gross income and for consideration of other parenting time arrangements that reflect the least detrimental alternative for the children.

Current orders regarding parenting time and child support shall remain in effect until new orders are entered on remand.

Judge METZGER and Judge NEY, concur.