The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 14, 2021

## 2021COA3

**No. 19CA2084, *Marriage of Crouch* — Family Law — Post-dissolution — Modification of Custody or Decision-making Responsibility**

A division of the court of appeals addresses the appropriate burden of proof to apply when considering a request to modify the allocation of decision-making responsibility between parents for vaccinating their children when one parent has a religious-based objection to vaccination. The division concludes that when applying the endangerment standard under section 14-10-131(2)(c), C.R.S. 2020, it is error for a court to impose an additional burden on the moving parent to show substantial harm to the children.

COLORADO COURT OF APPEALS      **2021COA3**

---

Court of Appeals No. 19CA2084
La Plata County District Court No. 17DR30001
Honorable Suzanne F. Carlson, Judge

---

In re the Marriage of

Rebecca Greene Crouch,

Appellee,

and

William Blake Crouch,

Appellant.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE PAWAR
J. Jones and Berger, JJ., concur

Announced January 14, 2021

---

The Law Firm of Lisa Ward, LLC, Lisa Ward, Donald Lawrence, Jr., Durango, Colorado, for Appellee

Willoughby & Associates, Kim Willoughby, Kaela Zihlman, Golden, Colorado, for Appellant

¶ 1    In Colorado, parents can elect not to vaccinate their children. But what happens when parents divorce and one parent later has a change of heart about vaccinating the children, while the other maintains a religious-based objection to vaccination? In this post-dissolution of marriage dispute, we address the appropriate burden of proof for the district court to apply when considering the request of William Blake Crouch (father) to modify joint medical decision-making responsibility to allow him to vaccinate the children, over the objection of Rebecca Greene Crouch (mother).

¶ 2    Following a hearing on father's motion to modify medical decision-making responsibility, the district court found that remaining unvaccinated "endangers the health of the children." But, because mother objected to vaccinating the children based, in part, on her religious beliefs, the court imposed an additional burden on father "to prove substantial harm to the children" in order to overcome "[m]other's right to exercise religion freely." The court found that father failed to meet the additional burden and denied his request to modify medical decision-making responsibility.

¶ 3     Father appeals the district court's order.  We reverse the order and remand the case for further proceedings.

## I.  Background

¶ 4     Mother and father divorced in 2017, and their parenting plan was approved by the court and incorporated into the decree.  In relevant part, the plan provides for joint medical decision-making authority and that "[a]bsent joint mutual agreement or court order, the children will not be vaccinated."

¶ 5     In 2018, however, father had a change of heart about the children remaining unvaccinated.  Father said that his position evolved after the parties' divorce when he researched the issue and concluded that the children should be vaccinated.  He described a "wake-up moment" he had when traveling for business to Seattle while the city was experiencing a measles outbreak, and then being afraid to be around the children after he got home out of fear of unknowingly exposing them.  He said that he travels often for work, including to international destinations, and that he wanted to travel to other countries with the children and believed their world would be increasingly too small without such opportunities.  He further

expressed concern about the children contracting vaccine-preventable diseases and exposing others.

¶ 6 For her part, mother opposed vaccinating the children, in part, because it conflicted with her religious beliefs. Father, however, asserted that he did not hold the same religious beliefs as mother and that the children did not adhere to restrictions dictated by mother's religion during his parenting time. In addition to her religious-based objection, mother also argued that vaccines pose a risk of side effects for the children. Specifically, because mother has an autoimmune disease and the children all had midline defects at birth, she asserted that vaccinations for the children are contraindicated.

¶ 7 Because they were at an impasse, the parties stipulated to the appointment of a parenting coordinator/decision-maker (PCDM) to decide the issue. After noting the parties' respective positions, the PCDM declined to render a decision, stating that the issue was outside of her expertise and likened rendering a decision on it to "practicing medicine without a license."

¶ 8 Having received no decision from the PCDM, father filed an expedited motion with the district court seeking an order allowing

him to have the children vaccinated in accordance with the Centers for Disease Control and Prevention guidelines and awarding him sole medical decision-making responsibility. Mother responded, objecting to vaccinations for the children and to father's request for sole medical decision-making responsibility, and the district court set a hearing on the matter.

¶ 9     Each party testified at the hearing. Additionally, father presented expert testimony from a physician, who was qualified as an expert in pediatrics and vaccinations. Mother did not present any expert testimony or any witnesses other than herself.

¶ 10     After the hearing, the court credited father's expert's testimony, rejected mother's medical-based objections, and found that the "failure to vaccinate endangers the health of the children." Recognizing that mother had also asserted a religious-based objection, however, the court went on to find that vaccination would interfere with mother's "right to exercise religion freely," and therefore imposed an "additional burden" on father "to prove substantial harm to the children" if they remained unvaccinated. The court ruled that father had not met this additional burden and denied his motion to modify. The court went on to find, however,

4

that if any of the children are wounded, thereby requiring a tetanus shot; if a disease outbreak occurs in the community preventable by vaccination; or if the children are to travel by air or internationally, such circumstances would constitute "substantial harm warranting a forthwith modification of decision-making." And because the court found that "air travel and international travel do create substantial harm," it prohibited the children from air travel or international travel unless they are vaccinated.

¶ 11    Father moved to reconsider the court's order under C.R.C.P. 59. In denying his motion, the court clarified that it was not ruling that the children could not be vaccinated, but only that father had not met his burden to modify decision-making responsibility so that he could make that decision.

¶ 12    Father appeals, contending that the court erred by (1) enforcing what he describes as an unenforceable "agreement to agree" in the parties' parenting plan; (2) making inconsistent findings under the endangerment standard; (3) failing to apply a strict scrutiny analysis to mother's religious rights objection; and (4) failing to consider and weigh his fundamental rights as well as mother's rights. We conclude that the court erred by misapplying

the endangerment standard in section 14-10-131(2)(c), C.R.S. 2020. Consequently, we reverse the court's order and remand the case for further proceedings.

## II. Father's Claim that the Parenting Plan's Vaccination Provision Is an Unenforceable "Agreement to Agree" Was Not Preserved

¶ 13     Father initially claims that the parties' parenting plan provision stating that the children would not be vaccinated unless the parties agree is unenforceable as an "agreement to agree." Because father failed to argue this issue in the district court, however, he cannot argue it for the first time on appeal. *See In re Marriage of Ensminger*, 209 P.3d 1163, 1167 (Colo. App. 2008); *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request . . . does not preserve all potential avenues for relief on appeal. We review only the specific arguments a party pursued before the district court.").

¶ 14     Father cites to his post-trial motion — in which he asserted that the court must decide the vaccination issue because the parties disagree on it — as sufficient to preserve the argument he now presents. We disagree. Father did not, at any point during the

6

proceedings or in his post-trial motion, argue that the vaccination provision was an unenforceable agreement to agree. Rather, he asked the district court to modify the vaccination provision and medical decision-making responsibility so that he can have the children vaccinated, and that is the issue on which the court ruled. Accordingly, the enforceability of the agreement's vaccine provision has not been preserved, and we do not address it. *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18; *Valentine*, 252 P.3d at 1188 n.4.

### III. Which Legal Standard Applies: Endangerment, Substantial Harm, or Strict Scrutiny?

¶ 15    Father's remaining contentions challenge various burdens of proof that he contends the court either improperly applied or improperly overlooked. First, father argues that the court made inconsistent findings under the endangerment standard by finding that "failing to vaccinate the children endangers their health," but also finding that father did not meet his "burden of showing substantial harm to the children." Next, he argues that because mother raised a religious objection to vaccination, the trial court should have applied a strict scrutiny analysis and found a

compelling state interest to overcome her objection. Finally, father argues that because he has a constitutional right to travel and to parent his children, the court erred by failing to recognize and weigh the parents' competing constitutional interests.

¶ 16　　We address father's remaining issues collectively to determine the correct legal standard to apply, and, in doing so, we conclude that by subjecting father to the "additional burden" to prove substantial harm, the court misapplied the endangerment standard in section 14-10-131(2)(c).

## A. Preservation

¶ 17　　Initially, we reject mother's argument that we may not review father's contention as it applies to the court's findings of endangerment and substantial harm because father did not raise it in the district court until his post-trial motion. "[A] party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings." *People in Interest of D.B.*, 2017 COA 139, ¶ 30; *see* C.R.C.P. 52. Thus, we may review father's challenge to the court's endangerment and substantial harm findings in relation to the application of the proper legal standard.

## B. Additional Background

¶ 18     Based on father's expert's testimony, the court made the following factual findings in applying section 14-10-131(2)(c):

- "Because of the way diseases are transmitted and because Durango [where the children live] is a tourist destination, the Court finds failure to vaccinate endangers the health of the children even though they are home schooled."

- Vaccination provides benefits to the children, including "preventing severe illness, permanent severe damage, and death."

- The risks of vaccination are "extremely low."

¶ 19     Neither party has challenged the court's factual findings, and because they are supported by the record, they are binding on us on appeal. *See In re Marriage of Newell*, 192 P.3d 529, 534-35 (Colo. App. 2008) (declining to disturb endangerment findings that were supported by the record). Father's physician expert witness disagreed with mother's position on the medical risks of vaccination. He further testified that although the parties' oldest child had a low percentage risk of contracting a vaccine-preventable

disease (because most people in the community have been vaccinated), he had a high percentage risk of contracting such diseases if he were exposed to an infected person, and the repercussions for him could be severe.

¶ 20　　The court expressly found that the children's physical health was endangered, *see* § 14-10-131(2)(c).  It is unclear, however, whether it considered the second prong of section 14-10-131(2)(c), that is, whether the harm likely to be caused by the change in decision-making is outweighed by the advantage to the child.  Instead, the court expanded its analysis and determined that because vaccinating the children would interfere with mother's right to freely exercise her religion, father must meet an additional burden of showing that the failure to vaccinate caused the children substantial harm.  It concluded that father did not meet that burden and therefore denied his motion to modify.

## C.  Legal Standards

¶ 21　　Allocating parental responsibilities is a matter within the sound discretion of the district court.  *In re Parental Resps. of B.R.D.*, 2012 COA 63, ¶ 15.  However, we review de novo whether the district court applied the correct legal standard.  *Id.*

¶ 22    A court shall not modify a decree allocating decision-making responsibility unless it finds, based on facts that have arisen since the decree, that a change has occurred in the circumstances of the child or of a party to whom decision-making responsibility was allocated and that modification is necessary to serve the child's best interests. § 14-10-131(2).  In applying these standards, the court shall retain the decision-making responsibility allocation from the prior decree unless, as relevant here, doing so "would endanger the child's physical health" and the harm likely to be caused by a change in decision-making responsibility is outweighed by the advantage to the child. § 14-10-131(2)(c); *see B.R.D.*, ¶¶ 17-18.

## D.  Endangerment, Strict Scrutiny, and Substantial Harm Under *McSoud*

¶ 23    The district court relied on *In re Marriage of McSoud*, 131 P.3d 1208 (Colo. App. 2006), to impose the additional burden on father to show substantial harm after it found endangerment under section 14-10-131(2)(c).  In doing so, the court erroneously applied the burden that applies when the *government* — here, the court — interferes with a parent's constitutional right, instead of the burden applicable when allocating sole decision-making to one parent over

11

the other. To be sure, father claims, on the one hand, that the court erred by making inconsistent findings regarding endangerment and substantial harm and, on the other hand, that the court erred by failing to apply a strict scrutiny analysis when considering mother's religious-based objection. To resolve both claims, we briefly review the circumstances in *McSoud* that warranted a strict scrutiny analysis and conclude that analysis is inapplicable here.

¶ 24    The court in *McSoud* restricted the child's mother from taking the child to a church of her religious choosing during her parenting time unless she also supported the child's participation in father's church. 131 P.3d at 1214, 1219-20. A division of this court held that by preventing mother from taking the child to her church during her parenting time, the court unconstitutionally restricted mother's religious rights. And, to the extent the order also required the mother to accompany the child to the father's church services during her parenting time, it further restricted her religious rights. *Id.* at 1219. Because the court was imposing the restrictions, such orders required strict scrutiny. That is, before the court could infringe on the mother's religious rights, it must show a compelling

state interest — for example, *substantial harm* to the child from the mother's actions in exposing the child to her religion and church. *Id.* at 1220.

¶ 25 But the *McSoud* division applied strict scrutiny to require a showing of a compelling state interest, namely, substantial harm, only as to the portion of the court's order where *the court*, as the state actor, infringed on the mother's religious rights. *See id.* at 1219-20; *see also id.* at 1216 ("Governmental interference with the constitutional rights of a fit, legal parent is subject to strict scrutiny.").

¶ 26 Conversely, here, the court clearly recognized that it was not mandating either vaccination or no vaccination for the children; rather, it was ruling on father's motion to modify vaccination and medical decision-making responsibility, in which *father* sought to make that decision for the children.

¶ 27 A parent's free exercise rights are not implicated by a court's allocation of decision-making responsibility between parents. Indeed, *McSoud* expressly rejects the need for strict scrutiny, and therefore the need to show substantial harm, when allocating decision-making responsibility between the child's parents because,

in that context, the court is merely expanding one parent's fundamental right at the expense of the other parent's similar right. *Id.* at 1218-19.  In short, the *McSoud* division upheld the lower court's allocation of religious decision-making responsibility between the child's two parents without requiring a showing of substantial harm to withstand strict scrutiny.  *See id.*; *cf. Vanderborgh v. Krauth*, 2016 COA 27, ¶¶ 20-21 (noting that a father's fundamental rights to parent were not implicated in a parenting time dispute between him and the child's mother).

¶ 28    Accordingly, here, the court erred by imposing a heightened burden on father to show substantial harm — a burden only relevant to show a compelling state interest under a strict scrutiny analysis — when considering his request to modify the allocation of decision-making responsibility between him and mother.  Instead, once the court found, with record support, that father met his burden to show that the failure to vaccinate endangers the children's physical health, and that the risks of vaccination are "extremely low" as compared to its benefits of "preventing severe illness, permanent severe damage, and death," it should have proceeded to the second prong of the inquiry, namely, whether the

harm likely to be caused by changing decision-making responsibility outweighed the benefit to the child. *See* § 14-10-131(2)(c).

¶ 29    Based on the above reasoning, we also reject father's claim that the court should have applied a strict scrutiny analysis to mother's asserted religious objection and erred by failing to do so. As discussed, a strict scrutiny analysis is not required when allocating decision-making responsibility between parents. So, the court was not required, as father contends, to find that mother's religious-based objection established a compelling state interest sufficient to withstand strict scrutiny. *See McSoud,* 131 P.3d at 1218-19 (holding that a compelling state interest need not be found in order to allocate religious decision-making responsibility to only one parent).

E.  Parents' Competing Constitutional Interests Under *Ciesluk*

¶ 30    Father last contends that the district court erred by not recognizing his constitutional rights to parent and to travel, and by failing to weigh his and mother's competing rights in accordance with *In re Marriage of Ciesluk,* 113 P.3d 135, 147-48 (Colo. 2005). Though we reverse the court's order on other grounds, because it

may arise on remand, we briefly address father's contention and specifically how the *Ciesluk* balancing of interests test applies in the context of an endangerment finding under section 14-10-131(2)(c).

¶ 31    In *Ciesluk*, the supreme court determined that the trial court erred by failing to weigh the parents' competing constitutional rights when it reviewed a modification of parenting time under a best interests standard — specifically, the relocation standard under section 14-10-129(2)(c).  But here, the court was tasked with considering a modification to decision-making responsibility under an endangerment standard.  And a division of this court has observed that "while endangerment will necessarily encompass best interests, few best interests arguments will show endangerment." *In re Marriage of West*, 94 P.3d 1248, 1251 (Colo. App. 2004). Additionally, the Colorado legislature has recognized that children have the right to be physically safe while in their parents' care.  § 14-10-123.4(1)(b), C.R.S. 2020.

¶ 32    Section 14-10-131(2) directs that a court "shall not modify" decision-making responsibility unless circumstances have changed such that a "modification is necessary to serve the best interests of the child"; included among the list of circumstances that authorize

16

modification is when the court finds endangerment, as the court did here. We do not interpret the statute to mean that parents' constitutional interests are never appropriate considerations when considering a request to modify decision-making responsibility alleging endangerment. Rather, to the extent parents' constitutional rights are relevant to the endangerment inquiry, they should be considered and weighed — without heightened scrutiny or deference. In other words, the parents' constitutional rights should be considered like any other factor that informs whether the harm likely to be caused by a reallocation of decision-making responsibility is outweighed by the advantage of the change. *See* § 14-10-131(2)(c).

¶ 33    Finally, based on the disposition reached in this opinion, we need not address father's challenge to the court's restriction preventing the children from traveling by plane or outside of the United States with him.

IV.  Conclusion and Remand Instructions

¶ 34    The order is reversed, and the case is remanded for the court to reconsider father's motion to modify medical decision-making responsibility under section 14-10-131(2)(c) by applying the

endangerment standard consistent with this opinion. The court may rely on the evidence presented at the prior hearing or, in its discretion, provide the parties an opportunity to present any new evidence concerning their or the children's changed circumstances.

¶ 35  The proceedings on remand shall occur forthwith. *See* § 14-10-128(1), C.R.S. 2020.

JUDGE J. JONES and JUDGE BERGER concur.