24CA0275 Parental Resp Conc RMP 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0275
City and County of Denver Juvenile Court No. 22JV328
Honorable Elizabeth J. McCarthy, Judge

---

In re the Parental Responsibilities Concerning R.M.P. and D.J.P., Children,

and Concerning A.B.P.,

Appellant,

and

C.S.O.,

Appellee.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE YUN
Harris and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Warren Domangue, Littleton, Colorado, for Appellant

Curtis Law Firm, LLC, Robert V. Salter, Englewood, Colorado, for Appellee

¶ 1    In this allocation of parental responsibilities case between A.B.P. (father) and C.S.O. (mother), father appeals the juvenile court's judgment restricting his parenting time with the parties' twins, R.M.P. and D.J.P. (the children). We affirm.

## I.    Relevant Facts

¶ 2    In November 2022, the juvenile court adjudicated father as one of the children's legal parents. Father subsequently moved for an allocation of parental responsibilities for the children under the Uniform Dissolution of Marriage Act, section 14-10-123, C.R.S. 2024.

¶ 3    As part of temporary orders, the juvenile court granted father a few hours of unsupervised parenting time once a week, contingent on completing certain requirements. The court also directed father to refrain from disparaging mother to or in front of the children; going to mother's residence; discussing the case with the children; and making any promises to the children about future parenting time.

¶ 4    In November 2023, the children's guardian ad litem (GAL), along with the parties' attorneys, filed a joint trial management certificate (JTMC). In it, the GAL expressed serious concerns about

1

father's behavior and its damaging impact on the children's emotional development.

¶ 5 Following an evidentiary hearing on father's motion, the juvenile court orally adopted the GAL's "statements" in the JTMC as its factual findings. The court also found that (1) mother's testimony was credible regarding the parties' "toxic relationship"; (2) father "talk[ed] to the children . . . about this case"; and (3) this was a "high conflict" matter. The court designated mother the children's primary residential parent, while father was allocated eight hours of supervised parenting time every Sunday.

¶ 6 On January 31, 2024, the juvenile court entered a written judgment that, for the most part, tracked its oral ruling.

¶ 7 Father now appeals.

## II. Parenting Time

¶ 8 Father contends that the juvenile court's decision to restrict his parenting time lacked sufficient factual findings and that the record does not support such a restriction. We are not persuaded.

### A. Preservation

¶ 9 We begin by addressing mother's argument that father's contentions are unpreserved because he did not object when the

juvenile court adopted the GAL's statements as its factual findings. She is mistaken. A party does not need to object to a court's findings to preserve a challenge to those findings. *See In re Marriage of Crouch*, 2021 COA 3, ¶ 17; C.R.C.P. 52. Thus, our review is not precluded on this basis.

### B. Standard of Review and Legal Principles

¶ 10 A court has broad discretion over parenting time orders, and we exercise every presumption to uphold its decision. *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13. We may not overturn the court's decision absent a showing of an abuse of discretion, meaning that it acted in a manifestly arbitrary, unreasonable, or unfair manner. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

¶ 11 However, we review de novo whether the court applied the correct legal standard. *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.

¶ 12 A court allocates parenting time in accordance with the child's best interests, giving paramount consideration to the child's safety and physical, mental, and emotional conditions and needs. § 14-10-124(1.5)(a), C.R.S. 2024; *see In re Custody of C.J.S.*,

37 P.3d 479, 482 (Colo. App. 2001). In making that determination, the court considers the factors listed in section 14-10-124(1.5)(a). While it need not make specific findings on each factor, the record must indicate that the court considered the pertinent factors. *In re Marriage of Martin*, 42 P.3d 75, 77 (Colo. App. 2002).

¶ 13 Parents generally have a right to a relationship and reasonable parenting time with their child. § 14-10-104.5, C.R.S. 2024; *Martin*, 42 P.3d at 77.

¶ 14 A court cannot restrict parenting time unless it "finds, after a hearing, that parenting time by the party would endanger the child's physical health or significantly impair the child's emotional development." § 14-10-124(1.5)(a); *In re Adoption of C.A.*, 137 P.3d 318, 323 (Colo. 2006). When a court "impos[es] or continu[es] . . . a parenting time restriction," it must "enumerate the specific factual findings supporting the restriction." § 14-10-124(1.5)(a).

¶ 15 The determination of what constitutes endangerment is highly individualized, and we will not disturb a court's findings on this issue if they are supported by the record. *In re Marriage of Wenciker*, 2022 COA 74, ¶ 26.

## C.    Discussion

¶ 16    Father argues that the juvenile court's factual findings are inadequate to justify the restriction on his parenting time. We disagree.

¶ 17    The juvenile court adopted the GAL's "statements" in the JTMC as its factual findings. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 9 n.1 (court's oral findings supplement its written order). The GAL wrote the following:

- Mother requested that father's parenting time be supervised. *See* § 14-10-124(1.5)(a)(I) (the parents' wishes are relevant to the child's best interests).

- Father sought an equal parenting time arrangement. *See id.*

- Father harassed and intimidated mother, including by following her, yelling at her, parking his RV near her home, and riding his scooter up and down her street. *See* § 14-10-124(1.5)(a) (the court must consider "all relevant factors" when determining the child's best interests).

- Father repeatedly disparaged mother in the presence of the children, which was harmful to the children's emotional well-being. *See* § 14-10-124(1.5)(a)(III) (interaction and interrelationship of the child with their parents, siblings, and any other person who may significantly affect the child's best interests are relevant to the child's best interests), (VI) (the ability of the parties to encourage the sharing of love, affection, and contact between the child and the other party is relevant to the child's best interests), (VII) (whether the past pattern of involvement of the parties with the child reflects a system, time commitment, and mutual support is relevant to the child's best interests).

- Father frequently discussed the case with the children, which "emotionally damage[d]" them. He would promise them increased parenting time, subject to mother's approval, and if she said no, the children would blame her, creating disappointment and confusion. *See* § 14-10-124(1.5)(a)(III), (VI)-(VII).

6

- While the children were well-adjusted overall, they displayed behavioral issues at home, likely linked to the "discord" between the parties. *See* § 14-10-124(1.5)(a)(III), (IV) (the child's adjustment to their home, school, and community is relevant to the child's best interests).

- Mother enrolled the children in therapy. *See* § 14-10-124(1.5)(a)(V) (mental and physical health of all individuals involved is relevant to the child's best interests).

- Unlike mother, there were concerns about father's ability to encourage a healthy relationship between the children and mother. *See* § 14-10-124(1.5)(a)(VI).

- Although father was clearly devoted to the children, his inability to manage his anger toward mother and place the children's needs over his own was deeply concerning. *See id.*

- Mother demonstrated her ability to prioritize the children's needs above her own and maintained cooperation throughout the case. *See id.*

- Given father's behavior, unsupervised parenting time for him would significantly impair the children's emotional development. *See* § 14-10-124(1.5)(a) (restrictions on parenting time cannot be imposed unless the court finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development).

¶ 18 So, contrary to father's argument, those findings are sufficient to inform us of the basis for the juvenile court's decision to restrict his parenting time. *See* § 14-10-124(1.5)(a); *see also In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 ("The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order.").

¶ 19 Still, father asserts that the record does not support the juvenile court's findings. Again, we disagree.

¶ 20 Mother testified that she wanted father to have eight hours of supervised parenting time every Sunday, as suggested by the GAL. Father, for his part, argued for equal parenting time.

¶ 21 Mother testified that the parties' "toxic relationship," which included father's abuse, led her to relocate to Colorado with the

then-four-year-old twins in August 2018. Father soon thereafter moved to Colorado and continued to threaten and harass her. He sent many foreboding messages to her, including one stating, "I'm going to be forced to do what I have to do. I can assure you[,] you will not like how it ends." She provided a recent photo of his RV parked near her home, seemingly to intimidate her. She stated that he rode up and down the street on a scooter, shouting at the house and asking the children to come to him; the children were upset and confused about whether they should go, as it was not during his scheduled parenting time. According to her, those actions burdened the children with adult issues. And she indicated that he would often yell at her and call her names in front of the children, "trying to turn them against [her]."

¶ 22    Mother also testified that his recent behavior frightened her and that the potential for escalating conflict caused "tremendous stress" for both her and the children.

¶ 23    Father constantly talked about the case to the children, sometimes blaming mother for his limited parenting time under the temporary orders. And the children became upset at her when she

declined to accommodate his promises about additional parenting time that deviated from the temporary orders.

¶ 24 When asked about the children's well-being after unsupervised parenting time with father, mother reported that they exhibited anxiety, nightmares, anger, and confusion.

¶ 25 Next, mother testified that the children were thriving in their small town, surrounded by many friends, and excelling at school.

¶ 26 Mother then testified that she went "over and above to accommodate parenting time with [father]." She added that her "goal" was for the children to have a safe and loving relationship with father. Moreover, she placed the children in therapy.

¶ 27 Therefore, the evidence supports the juvenile court's findings. And because the court's decision to restrict father's parenting time is supported by sufficient findings and evidence, we cannot say that the court abused its broad discretion. *See S.Z.S.,* ¶ 13; *see also Hatton,* 160 P.3d at 330; *Wenciker,* ¶ 26.

¶ 28 Nonetheless, father insists that other evidence compels a different conclusion. For example, he points to a transcript of a video visit in October 2023 between himself and the children, which purportedly shows no instances of endangerment. But this

argument essentially asks us to reweigh the evidence, which we cannot do. *See Thorburn*, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *see also In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in [district] courts to weigh conflicting evidence."); *In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (appellate court may presume that the district court considered all of the evidence admitted).

## III.   Disposition

¶ 29    The judgment is affirmed.

JUDGE HARRIS and JUDGE KUHN concur.